SATER C. COMER

*v.*

ALICE T. COMER *et al.*

*Filed at Springfield October 6, 1886.*

1. ADVANCEMENT—*evidence that a gift was intended as an advancement—proof of intention necessary.* Proof that a father has made gifts of lands, money or personal property to one of his sons, is not sufficient to prove an advancement. It must appear in some way that they were intended as advancements, before the child's part in his father's estate can be charged

with them. The fact that the father has bestowed more upon one child than another, standing alone, will not be sufficient to charge such child with the excess.

2. Casual statements of a common ancestor, made to persons having no sort of interest in the subject matter of the conversations, and at a time when not transacting any business in regard to the matters, offered to show that such ancestor had bought lands and had the title made to a deceased son as an advancement, if competent evidence, are entitled to but little weight.

3. But if such declarations or statements were made in the presence of such son, they will be competent evidence against his heirs on the question of an advancement; but their character and force as evidence will be greatly weakened by the fact of the death of both the father and son, as the latter, if living, might explain the statements of his father.

4. A person died intestate, seized of lands occupied as his homestead, leaving a widow and two sons, one married and the other single. The latter ·thereafter remained upon the land with his mother for a period of over twelve years, during which time the married brother made no claim for any share of the premises or for any of the rents and profits: *Held,* that no importance could be attached to his failure to assert his rights as tenant in common, and that such fact afforded no evidence, by way of admission, that certain gifts of his father to him were advancements.

5. Limitation—*as between tenants in common.* While the relation of tenants in common exists between two persons in respect to a tract of land inherited by them, the Statute of Limitations will not run against either in favor of the other.

6. Witness—*competency—of party against an heir.* Where a party died seized of real estate, leaving two sons, his only heirs, one of whom dies intestate, leaving minor children as his heirs, who file a bill for partition of the lands against their uncle, and he sets up in defence certain alleged advancements made by his father to his brother, which he asks to have brought into *hotchpot,* the defendant will not be a competent witness, in his own behalf, to show such advancement, or to testify to any facts occurring before the death of the complainants' father.

7. Same—*former decisions, distinguished.* This case is to be distinguished from that of *Pigg* v. *Carroll,* 89 Ill. 205, holding the parties competent as witnesses in a suit for partition. There, the title of the ancestor was not disputed, while in this case the title of complainant's ancestor is attacked and sought to be defeated.

Appeal from the Circuit Court of Hancock county; the Hon. William Marsh, Judge, presiding.

Messrs. Manier & Miller, for the appellant:

The rights of the parties must be determined by the law in force in 1867, when the common ancestor died. *Woodworth* v. *Paine*, Breese, 374; *Jones* v. *Bond*, id. 287; *Sturgis* v. *Ewing*, 18 Ill. 185; Cooley's Const. Lim. secs. 359-362.

In favor of equality and right, a gift from a parent to a child is presumed to be an advancement, liable to be rebutted. *Taylor* v. *Taylor*, 4 Gilm. 303; *Brown* v. *Burke*, 22 Ga. 574; *Bay* v. *Cook*, 31 Ill. 336; *Wormley* v. *Wormley*, 98 id. 544; *Mitchell* v. *Mitchell*, 8 Ala. 414; *Hodson* v. *Macey*, 8 Ind. 121; *Lawrence* v. *Mitchell*, 3 Jones' L. (N. C.) 190; *Clarke* v. *Wilson*, 27 Md. 693.

A purchase of land by a parent in the name of a child is presumed to be an advancement, liable to be rebutted by facts and circumstances. *Grattan* v. *Grattan*, 18 Ill. 167; *Maxwell* v. *Maxwell*, 109 id. 588; *Cartwright* v. *Wise*, 14 id. 417; *Smith* v. *Smith*, 21 Ala. 761; *Phillips* v. *Chappell*, 16 Ga. 16; *Dillman* v. *Cox*, 23 Ind. 440; *Autry* v. *Autry*, 1 Ala. (Sel. Cas.) 542; *Woolery* v. *Woolery*, 29 Ind. 249; *Butler* v. *Insurance Co.* 14 Ala. 777; *Page* v. *Page*, 8 N. H. 187; *Merrill* v. *Rhodes*, 37 Ala. 449; *Autry* v. *Autry*, id. 614.

When the debt of a child is paid by the father, in the absence of proof to the contrary such payment will be presumed to be an advancement. *Johnson* v. *Hogh*, 3 Head, 56.

Holding the child liable to pay for the thing transferred, rebuts the presumption of an advancement. *Barton* v. *Rice*, 22 Pick. 508; *Harris' Appeal*, 21 Pa. St. 283.

But the cancellation or surrender by the parent, of the evidence of the child's indebtedness, is evidence of an advancement. *Blanc* v. *Bertant*, 16 La. Ann. 294.

A deed from a parent to a child, expressed to be in consideration of natural affection, or upon that and a nominal sum, is presumptive evidence of an advancement. *Newell* v. *Newell*, 13 Vt. 24; *Matherhead* v. *Field*, 26 id. 665; *Law* v. *Smith*,

2 R. I. 244; *Speer* v. *Speer*, 14 N. J. Eq. 240; *Gordon* v. *Barkelow*, 2 Halst. Ch. 94.

On the question whether a gift was intended as an advancement, the acts and declarations of the parent, either concurrent or subsequent, may be shown as evidence, as well of his original intention as of his final purpose. *Johnson* v. *Belden*, 20 Conn. 322.

As to the admissibility of the declarations of the ancestor, made after the deed or transaction, to show no advancement was intended, see *Merrill* v. *Rhodes*, 37 Ala. 449; *Woolery* v. *Woolery*, 29 Ind. 249; *Milford* v. *Billingham*, 16 Mass. 108; *Hicks* v. *Gildersleve*, 4 Abb. Pr. 1; *Autry* v. *Autry*, 37 Ala. 614; *Lawson's Appeal*, 23 Pa. St. 85; *Phillips* v. *Chappell*, 16 Ga. 16; 14 Ala. 777.

The declarations of an intestate, that certain notes held by him on his son were not held as debts, but as advancements to the son, are admissible in evidence, in a suit by a grandchild for her share in the estate. *Bransford* v. *Crawford*, 51 Ala. 20; *West* v. *Bolton*, 23 Ga. 321.

The declarations of a father, whether made at the time of the transaction or afterward, are competent evidence to prove the deed was intended as an advancement. It is a question of intent, and may be shown by the declarations of the parent or the admissions of the child. *Speer* v. *Speer*, 14 N. J. Eq. 240; *Cline* v. *Jones*, 111 Ill. 566.

Whether a gift by a father to his child is an absolute gift or an advancement, depends upon the intention of the father; and his statements, made at the time of the gift or subsequently, are competent evidence to show what was his intention. *Watkins* v. *Young*, 31 Gratt. 84; 2 Phillips on Evidence, (C. & H.) 705.

Messrs. HOOKER & EDMUNDS, also for the appellant:

Whether a purchase in the name of a child is an advancement or not, is a question of intention, though presumed, in

the first instance, to be a settlement or advancement. Story's Eq. Jur. secs. 1202-1206; *Wormley* v. *Wormley*, 98 Ill. 553.

It will be regarded *prima facie* an advancement. Hill on Trustees, *97; *Taylor* v. *Taylor*, 4 Gilm. 303; *Cartwright* v. *Wise*, 14 Ill. 418.

Gifts by a parent to a child are presumed to be advancements, unless it otherwise affirmatively appears. *Grattan* v. *Grattan*, 18 Ill. 169; *Ray* v. *Loper*, 65 Mo. 472.

The question whether a gift is an advancement, being a question of the intention of the donor, anything he may have said, either in relation to the particular gift, at the time of making it, or after, or at any time when speaking of his family, heirs or estate, and his disposition and intentions in relation thereto, are competent evidence in aid or rebuttal of the presumption of an advancement, and to show the real intention with which such gifts were made. *Speer* v. *Speer*, 14 N. J. Eq. 240, and cases there cited; *Cline* v. *Jones*, 111 Ill. 563.

Messrs. MACK & BAIRD, for the appellees:

The admissions and declarations of Samuel Comer are inadmissible to prove the alleged advancements, but are proper as evidence against the appellant. 1 Greenleaf on Evidence, secs. 189, 190.

The declarations of a parent, made to third parties, are not admissible to prove the fact of an advancement. *Kennedy* v. *Kennedy*, 57 Mo. 53; *Ray* v. *Loper*, 65 id. 472; *Darrier* v. *Darrier*, 58 id. 222; *Rings* v. *Richardson*, 53 id. 395; *Hanup* v. *Hanup*, 49 Ind. 384.

Since Samuel Comer and appellant are privies, the declaration of one is, in legal effect, that of the other, and entitled to the same weight. 1 Greenleaf on Evidence, secs. 23, 189 and 190.

That appellant was incompetent to testify in his own behalf, see Rev. Stat. chap. 51, sec. 2; *Boynton* v. *Phelps*, 52

Ill. 219; *Buchman* v. *Allwood,* 71 id. 162; *Alexander* v. *Hoff-man,* 70 id. 117; *McCann* v. *Atherton,* 106 id. 31; *Ferbrache* v. *Ferbrache,* 110 id. 210.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case is for partition. It appears, from the admission of all parties, that Samuel Comer died July 20, 1867, leaving two sons, Sater C. and Sylvester L. Comer, his only heirs, and Harriet Comer, his widow. Sylvester L. Comer died March 3, 1879, leaving his widow, Alice A. Comer, and Harriet L. Comer, Samuel H. Comer and Frank G. Comer, his children and only heirs-at-law. Afterwards, on the 25th day of April, 1883, Harriet Comer, widow of Samuel Comer, died. It is also conceded, that at the time of his death the legal title to the lands described in the bill was in Samuel Comer. It seems that after the death of Samuel Comer, his widow, Harriet, with her son Sater, continued to occupy the lands sought to be partitioned, up until the time of her death, which occurred at the date above stated. Shortly after the death of the widow, and after the lands thereby became freed from any claim of homestead and dower on her part, this bill was filed by the widow and heirs-at-law of Sylvester L. Comer, deceased, against Sater C. Comer, for partition of the lands of which Samuel Comer died seized, as described in the bill. The bill was filed on the 8th day of August, 1883. But for the defence sought to be made, there could be no complaint made as to the justness of the present decision. As before stated, there is no question made as to the fact the legal title to the lands described in the bill was in Samuel Comer at the time of his death. His only heirs were his two sons, Sater C. and Sylvester L. Comer, and by the decree one-half of the lands is to be assigned to his surviving son, and the other half to the legal heirs of his deceased son, subject to the dower of their mother. But the partition is resisted on the ground, as

stated in the answer, that Samuel Comer, at the time of his death, was also seized of either an equitable or legal title to three tracts of land other than the lands described in the bill, the legal title to which appeared from the record to be in Sylvester L. Comer, since deceased, at the time of the death of his father; that Sylvester L., several years prior to the death of his father, executed a deed conveying to him these three tracts, and delivered the deed to him, but that the deed was never recorded; that during the last illness of his father, and shortly before his death, Sylvester L., without the consent of his father, possessed himself of such deed and carried it away; that the three tracts were purchased and paid for by Samuel Comer, and the title thereof taken to said Sylvester L.; that Sylvester L. paid no part of the purchase money therefor, but held the naked legal title thereof for the benefit of his father; that in this partition proceeding the title of these three tracts should be found and decreed to have been in Samuel Comer at the time of his death, or to have been held by Sylvester L. as an advancement by said Samuel to said Sylvester L., and, in either event, that the same be brought into *hotchpot*, and the rights of all the parties in all such premises be by the court determined in this cause. Defendant therefore denies Sylvester L. became, upon the death of his father, seized in fee of one-half of the premises, as in the bill described, as therein stated. Defendant states that Samuel Comer purchased $22\frac{5}{100}$ acres, and paid therefor $2750, the fair price thereof, and caused the same to be conveyed to Sylvester L. as an advancement; that Sylvester L. soon after took possession thereof, and that he and his family have remained and continued in possession thereof since; that the same should be brought into *hotchpot* in this cause. Defendant says he is entitled to one-half of all the land in which Samuel, at his death, had an interest, either legal or equitable, including the three tracts above described, the legal title of which stood of record in Sylvester L. at the death of his father; also, of

all the personal property owned by Samuel, and advancements made by him to Sylvester. Defendant also admits that his father madê advancements to him, both in real and personal property, and he offers to bring the cost or proceeds thereof into *hotchpot*, with the other property hereinbefore mentioned, and advances made to Sylvester L., as before stated, to the end that the whole may be divided and partitioned between the parties to this suit, according to their respective interests in all such property and advances.

Other matters are alleged in the answer, but it will not be necessary to make any statement of them to an understanding of the matters in contention. Issues, by replication, were formed on the matters alleged in the answer, but the court, on the final hearing, seems to have found the defence insisted upon was not established, and decreed a partition of the lands described in the bill, between complainants and defendant, as their interests are therein stated. Defendant brings the case to this court on appeal.

One ground of error insisted upon is, that the trial court erred in rejecting and in refusing to consider proper evidence on the part of defendant. On the hearing in the circuit court, defendant was examined, and testified at length in his own behalf, and it is said in argument, "it seems the court, on the final hearing, rejected his testimony." This record has been subjected to a careful examination, and it is not discovered that the court either rejected or refused to consider the testimony of defendant. It seems complainants objected to defendant giving testimony on his own behalf, for the reason they sued as heirs of a deceased person; but the record at that time discloses no ruling of the court in regard to it. But conceding it is true, as counsel suggest, the court did reject and refuse to consider the testimony given by defendant on his own behalf, there was no error of law in the ruling in that respect. Under the statute (Rev. Stat. 1874, chap. 51, sec. 2,) he was clearly incompetent. Complainants sue as the heirs

12—119 ILL.

of their deceased father. It was the estate that was in their deceased father they had sued for and were endeavoring to recover. This case is wholly unlike *Pigg* v. *Carroll,* 89 Ill. 205, and subsequent cases on the same subject, where the parties in interest and to the record were held to be competent witnesses in their own behalf. In those cases, the parties litigating held a title derived from the same identical source, and the litigation concerned property it was conceded belonged to the parties to the suit. But here, the title that was in the ancestor of complainants is disputed, and his minor heirs are endeavoring to maintain the right that was in him. That brings the objection to defendant's testimony precisely within the exception mentioned in the section of the statute cited.

But it is as to the merits of the case the chief difficulty is met with. It is certain, however, the theory advanced in the answer as to the three tracts of land of which Samuel Comer, at the time of his death, was the equitable owner, notwithstanding the legal title was in the ancestor of complainants, has very little, if anything, in its support in the evidence, or elsewhere in the record. The legal title to neither of these tracts of land was ever in Samuel Comer. One tract was bid off at a tax sale to him, but he assigned the certificate of purchase to his son Sylvester, to whom the deed was ultimately made. The title to the other lands all came to Sylvester from other persons, and not from his father. It does not appear the deed Sylvester made to his father was ever intended to take effect. It was not made a matter of record, and was taken back by Sylvester. So far as anything is proved in respect to the making of this deed, it is, that it was not intended it should ever take effect, and it seems both parties must have so understood it. It may therefore be taken as true, that neither the equitable nor the legal title to these lands was in Samuel Comer at the time of his death. The questions of most difficulty are, whether Samuel Comer bought these lands, and caused them to be conveyed to his son Sylvester by way of

advancement, and whether he should be now charged with the cost of the same as so much money advanced to him at the times mentioned. The evidence on this branch of the case is most unsatisfactory. After rejecting, as must be done, the testimony of defendant, much of that which remains consists of casual statements of the common ancestor, made to persons having no sort of interest in the subject matter of the conversations, and at a time when he was transacting no business in regard to the subjects of the present controversy, and hence, even if conceded to be competent, is always most unsatisfactory and unreliable evidence. Some of the statements alleged to have been made by the common ancestor were made in the presence of his son, since deceased, and as to this evidence no objection could be sustained as to its competency, but its character is much weakened by the fact both parties whose declarations are given in evidence are now dead. Had Sylvester survived, he might have been able to give some reasonable explanations of the statements made by his father in his presence. The benefit of such explanations, which would have been most valuable, is now, of course, lost.

This record is quite voluminous, and it would be a work of great labor to go through and comment on the testimony of each witness bearing directly or remotely upon the subject of the controversy. It would answer no good purpose to do so, and it will not be done. It will be sufficient to state the conclusions reached.

Undoubtedly the common ancestor dealt generously with his two sons. He rendered assistance to them, and no doubt bestowed gifts upon them of considerable value. This much is admitted by defendant, and he offers, by answer, to bring into *hotchpot* what he received from his father. It does not appear, however, that he ever intended to, or did, charge them with the gifts he made to either son as an advancement, as that term is used in the statute. At most it was a mere presumption. Prior to the act of 1872, a gift made by

a father to his son was an advancement. Like any other presumption, it might be overcome by evidence, and, most generally, slight evidence was regarded as sufficient. All the decisions in this State hold, it was a question of intention whether a gift from a parent to a child was an advancement, under the law as it was prior to the act of 1872. It is not every gift that a parent may make the child that is to be construed as an advancement. It should appear, in some way, it was intended as an advancement, before the child's part will be charged with it. A father may bestow more upon one of his children than another; but that fact, standing alone, will not be sufficient to charge such child with the excess, in the final distribution of his intestate estate. In this case, whether Samuel Comer gave one of his sons more than the other, is not a question that need be considered. It is not proved that he intended to make advancements, in the technical sense, to either of them. The kindly assistance which was no doubt rendered to both sons, by way of property and money, is not to be, and ought not to be, construed as advancement. On the whole evidence considered, the decree is right, and ought to stand. Certainly there is nothing in the record that would warrant a reversal of the decree on the merits of the case.

A period of over twelve years elapsed from the death of Samuel Comer before this bill for partition was brought, and that, it is said, indicates that Sylvester, in his lifetime, acquiesced in the right of defendant to the exclusive ownership of the property of which their father died seized. But little importance need be attached to this fact in the case. The brothers were tenants in common of the lands that descended to them from their deceased father, and, of course, no statute of limitations would bar relief while that relation existed. It is not so insisted. It is, at most, insisted, Sylvester, in his lifetime, acquiesced in the alleged ownership of defendant. The position taken can not be maintained. The fact the widow and mother of the heirs resided upon these lands with

her son, the defendant, and had a right of homestead and dower in the same, affords a reason why Sylvester never commenced proceedings for the partition of the estate. The bill was filed by complainants in a few months after the death of the widow, which relieved the property from the right of homestead and dower. This fact may or may not be the reason why proceedings were not sooner instituted for a division of the estate. But there is another view that may be taken. It is an admitted fact that Samuel Comer died seized of these lands, and, of course, they descended, in equal proportions, to his sons, subject to the dower of their mother. The legal title to an undivided one-half of the lands confessedly stood in Sylvester from the death of his father until his death, which did not occur until 1879, and then descended to his heirs, the present complainants. If, during that long period of twelve years or more, defendant claimed to be the exclusive owner of the lands of which his father died seized, subject only to the homestead and dower rights of his mother, why is it that he took no steps to compel a conveyance to himself of the legal title that was in his brother? Nothing of the kind was done, and it does not appear defendant ever demanded a conveyance from his brother, by bill or otherwise. Nor does it appear that any claim of exclusive ownership was ever put forth to the entire property until since the death of Sylvester. The delay suffered in no way sustains the claim now put forth by defendant. It rather operates against the assertion of it since the death of the ancestor of complainants, who could have defended against it, in his lifetime, with a fuller knowledge of the facts than his heirs can now possibly do.

The decree of the circuit court will be affirmed.

*Decree affirmed.*