FRANCES LYNGHAUG v. JOHN PAYTE, SPECIAL
ADMINISTRATOR OF ESTATE OF
IRVIN O. EVENSON.

76 N. W. (2d) 660.

April 27, 1956—No. 36,692.

*Ralph T. Lilly* and *Charles S. Kidder,* for appellant.

*Eugene W. Hoppe, Manley Frisch,* and *James R. Bell,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

The facts essential to a determination of the issues presented here may be briefly stated. On the early morning of March 29, 1953, Irvin O. Evenson and Halvor George Lynghaug were found seated in an automobile parked near the curb on Marshall Avenue in St. Paul. The motor of the automobile was running at the time it was seen by St. Paul police officers. When the car doors were opened there was a strong odor of gas. Evenson was seated under the steering wheel, and Lynghaug was seated beside him. After futile attempts to restore them by artificial respiration, they were pronounced dead, and death later was determined to have resulted from carbon monoxide gas.

Evenson had been working at a filling station, and Lynghaug had been working in the parts department of Buick Motors. The automobile was a 1946 Oldsmobile owned by Evenson. Lynghaug had known Evenson for a few months and sometimes bought gasoline at the service station where Evenson worked. Lynghaug did not work on the day preceding his death. He left home about noon, and, as

far as appears from the record, neither his wife nor anyone else knew where he was from that time until he was found in Evenson's car about two o'clock the next morning.

Upon examination it was found that the muffler and tail pipe on the automobile were very defective. The front exhaust pipe was loose where it bolted onto the engine; the muffler was rusted out in spots; and the tail pipe was about five feet short, extending only about to the rear axle. The parts of the tail pipe remaining were held to the chassis of the car by wire. There is no dispute that the muffler assembly was so defective that it permitted carbon monoxide gas to enter the car.

M. S. A. 169.69 reads as follows:

"Every motor vehicle shall at all times be equipped with a muffler in good working order which blends the exhaust noise into the overall vehicle noise and is in constant operation to prevent excessive or unusual noise, and no person shall use a muffler cutout, by-pass, or similar device upon a motor vehicle on a street or highway. The exhaust system shall not emit or produce a sharp popping or crackling sound. *Every motor vehicle shall at all times be equipped with such parts and equipment so arranged and kept in such state of repair as to prevent carbon monoxide gas from entering the interior of the vehicle.*" (Italics supplied.)

Section 169.96 reads:

"This chapter shall be interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.

"In all civil actions, a violation of any of the provisions of this chapter, by either or any of the parties to such action or actions shall not be negligence per se but shall be prima facie evidence of negligence only."

The trial court submitted the case to the jury on the theory that proof of violation of § 169.69 established a prima facie case of negligence. The court refused to give defendant's requested instruction that, before plaintiff could recover, the jury must find that defend-

ant's decedent had knowledge of the defects in the muffler which caused the death of plaintiff's decedent. The jury returned a verdict for plaintiff. The decisive question is whether a finding of knowledge was essential to recovery.

■ In order to establish liability on a cause of action based on a violation of a statute, it is incumbent upon plaintiff to prove that she was a member of a class for whose protection the statute was passed. Where the evidence will permit an inference that a relationship existed that would bar recovery, it must be assumed that such relationship existed in the absence of proof and determination that a relationship existed that will permit recovery. There is no claim here that plaintiff's decedent was a trespasser. The only relationship that might bar recovery is that of a gratuitous guest. In determining whether the evidence sustains the verdict on the theory on which the case was submitted to the jury it must, therefore, be assumed that plaintiff's decedent was a gratuitous guest.[1]

■ Relying principally upon Olson v. Buskey, 220 Minn. 155, 19 N. W. (2d) 57, and Otto v. Sellnow, 233 Minn. 215, 46 N. W. (2d) 641, 24 A. L. R. (2d) 152, defendant invokes the rule that a host owner of an automobile owes no duty to his guest respecting the condition of the car except that of informing him of dangers of which he has knowledge. The rules pertaining to the duty of a host owner or operator of a car to a guest passenger which we follow[2] are clearly stated in the Olson case as follows (220 Minn. 157, 19 N. W. [2d] 58):

"* * * the host driver of an automobile owes his guest the duty to operate the car with reasonable care so that the danger of riding in it is not increased or a new danger added to those assumed when the guest entered the car. [Citing cases.]

"When a guest enters an automobile, he accepts it in its existing condition, except as to latent defects known to the driver and unknown to the guest. [Citing cases.]

---

[1] 9C Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) §§ 6115, 6146.

[2] See, 13 Dunnell, Dig. (3 ed.) § 6975a.

"The rationale of these cases is that one who invites another to ride in an automobile is not bound to furnish a sound vehicle, but that if the host has knowledge of a defective condition of the vehicle which would make riding in it hazardous or unsafe for the guest, the host has an obligation to warn the guest of such danger. [Citing cases.] The host owes no duty of prior inspection or repair. [Citing cases.]"

We followed the same rule in Otto v. Sellnow, *supra*. The rule is stated in 4 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) § 2333, as follows:

*"Save where definite statutory requirements respecting the necessary equipment of motor vehicles are not complied with,* so as to make out a case of negligence per se by reason thereof, the general rule respecting injuries attributable to defects in the condition of the automobile is that a gratuitous invitee riding therein as the guest of the owner, or driver, accepts the machine of his host as he finds it, subject to the limitation that the host must not in effect set a trap by knowingly or culpably exposing invitees to the risk created by a known or obvious defect in the automobile or otherwise be guilty of active negligence in this connection contributing to the injury of guests. A trap, within the meaning of such rule, is a hidden danger lurking upon the premises, or in the automobile which is known to the host or should be known to him in the discharge of the duty for a passenger's safety which the law imposes on him and which the guest may avoid if he knows of it.

"Stated differently, he is not liable for injuries suffered by guests by reason of the defective condition of the automobile, in the absence of some showing, that he knew, or, in the exercise of whatever measure of care he is bound to exercise for the safety of gratuitous passengers, should have known, of the existence of the defect; the question of whether he did have such knowledge or notice of the defect as to render him liable being one of fact." (Italics supplied.)

The rule is based on the same considerations as apply to licensees on land.[3]

While the authorities are not all in harmony on this question, it would seem that, in those states which do not now have statutes limiting the liability of a host to a guest, the majority support the rule we follow.[4] In states having so-called "guest statutes" various degrees of negligence are required to establish liability, but we are not concerned with such statutes here. Under our law the right of recovery is based on ordinary negligence.

The reason for permitting a guest to recover for negligence in the operation of an automobile,[5] while denying him a right to recover for defects in the car which were unknown to the host, sometimes has been placed on the theory that a host is liable for active negligence but not for passive negligence.[6] The case of Olson v. Buskey, 220 Minn. 155, 19 N. W. (2d) 57, is illustrative of this difference. There we held that the host was not liable for defective equipment but that he might be liable for negligent operation of the car. Much confusion exists in attempting to rationalize the rule on the basis of duty of the host to the guest or assumption of risk by the guest.[7] The difficulty in applying the theory that the lack of liability rests on assumption of risk in cases involving defects in equipment lies largely in the fact that assumption of risk ordinarily rests upon knowledge of a known risk and acceptance of it.[8] Of course, it is

[3]Prosser, Torts (2 ed.) § 77, p. 450. As to the rules of licensees, see Restatement, Torts, § 342.

[4]5 Am. Jur., Automobiles, § 235; 60 C. J. S., Motor Vehicles, §§ 400, 403; 61 Id. § 486; Prosser, Torts (2 ed.) § 77, p. 451. For cases involving injuries to guests due to defective equipment, see Annotations, 20 A. L. R. 1029, 40 A. L. R. 1344, 47 A. L. R. 332, 51 A. L. R. 585, 61 A. L. R. 1264, 24 A. L. R. (2d) 165.

[5]See, Berlin v. Koblas, 183 Minn. 278, 236 N. W. 307; Anderson v. Anderson, 188 Minn. 602, 248 N. W. 35; Fairchild v. Fleming, 125 Minn. 431, 147 N. W. 434.

[6]27 Minn. L. Rev. 358.

[7]Rice, *The Automobile Guest and the Rationale of Assumption of Risk,* 27 Minn. L. Rev. 323, 342.

[8]Cf. White v. Cochrane, 189 Minn. 300, 249 N. W. 328.

apparent in the type of case now under consideration that it is assumed that neither the guest nor the host knew of the danger.[9] And yet it is said that the guest accepts the risk involved in any defect unknown to the host when he enters such automobile. An example of this type of situation is found in Lestico v. Kuehner, 204 Minn. 125, 133, 283 N. W. 122, 127, where we said:

"* * * The owner of an automobile may be negligent in using worn or damaged tires. In the absence of such circumstances, his guests assume such risk as arises from punctures and blowouts."

Application of the above general rules, under whatever rationale we may apply, does not completely dispose of the issue now before us. The question here goes further than application of the general rule of liability. More fundamentally, we are confronted with the effect of a statute imposing upon the owner of an automobile a duty to maintain his car in such a way as to prevent injury from carbon monoxide gas which enters the car because of a defective muffler. The decisive question here is: Can a gratuitous guest claim the benefit of a violation of this statute without proof of knowledge of the defect on the part of the host owner at the time the guest entered the automobile?

In the absence of an applicable statute, negligence would be determined according to common-law rules—which is to test it by the conduct of an ordinarily prudent person. The standard of conduct required of a reasonable man may be prescribed by statute, and, in the use of an automobile, such conduct often is prescribed by our traffic code.[10] In such case, the "statutory standard of care is but a legislative substitute for the common-law standard of the reasonably prudent man."[11] Under our present traffic code, violations of the statute are prima facie evidence of negligence only.[12]

[9]See, Rice, *The Automobile Guest and the Rationale of Assumption of Risk*, 27 Minn. L. Rev. 323, 377.

[10]Olson v. Duluth, M. & I. R. Ry. Co. 213 Minn. 106, 113, 5 N. W. (2d) 492, 496.

[11]Lavalle v. Kaupp, 240 Minn. 360, 363, 61 N. W. (2d) 228, 230, 40 A. L. R. (2d) 539, 542.

[12]M. S. A. 169.96.

As far as a determination of negligence is concerned, however, the same considerations are involved in establishing liability whether the standard is fixed by the common law or statute.[13] In Osborne v. McMasters, 40 Minn. 103, 105, 41 N. W. 543, 12 A. S. R. 698, 699, speaking through Mr. Justice Mitchell, we said:

"* * * Negligence is the breach of legal duty. It is immaterial whether the duty is one imposed by the rule of common law requiring the exercise of ordinary care not to injure another, or is imposed by a statute designed for the protection of others. In either case the failure to perform the duty constitutes negligence, and renders the party liable for injuries resulting from it. The only difference is that in the one case the measure of legal duty is to be determined upon common-law principles, while in the other the statute fixes it, so that the violation of the statute constitutes conclusive evidence of negligence, or, in other words, negligence *per se*.[14] The action in the latter case is not a statutory one, nor does the statute give the right of action in any other sense except that it makes an act negligent which otherwise might not be such, or at least only evidence of negligence. All that the statute does is to establish a fixed standard by which the fact of negligence may be determined. The gist of the action is still negligence, or the non-performance of a legal duty to the person injured."

■ Before civil liability can be found in an action based on negligence, it must be shown that there has been a breach of duty toward plaintiff. In Boyd v. City of Duluth, 126 Minn. 33, 36, 147 N. W. 710, 711, we said:

"* * * No principle is better established than that acts or omissions by one person followed by injury to another do not alone give rise to liability. If the conduct complained of be not wilful, it must constitute negligence, and the legal concept of the latter is composite and correlative, involving not only conduct with respect to some subject matter but also a duty to the person injured, or some

---

[13]See, also, Restatement, Torts, § 285.

[14]Under § 169.96, a violation of the statute is now declared by statute to be prima facie evidence of negligence instead of negligence per se.

class to which he belongs, of which the conduct constitutes a violation; and such duty, furthermore, when not specifically defined, is not to guard against all possible consequences of the conduct, but only against those which may reasonably be anticipated."

Plaintiff must be within the class for whose protection the statute was passed,[15] and the injury must be of the type the statute was intended to prevent.[16]

Sometimes it is clear from the statute itself what class it intends to protect. In such cases no difficulty arises. The purpose of the statute is a matter of interpretation in the light of the evil to be remedied,[17] or, more specifically, as in this case, the harm it is intended to prevent. Section 169.69 has an interesting history. As originally enacted, it obviously was intended for the prevention of noise within the limits of a municipality and to prevent the frightening of horses. L. 1925, c. 416, § 25. By L. 1927, c. 412, § 47, the act was amended, and the declared purpose was to prevent excessive or unusual noise and to prevent the *emission* of excessive smoke. It was again amended by L. 1937, c. 464, § 108, but the purpose remained to prevent noise and "annoying" smoke. It was not until the amendment by L. 1939, c. 430, § 20, that concern was shown for the welfare of those within the car. At that time the declared purpose of preventing smoke outside the car was dropped and concern was shown for those within the car by adding the italicized portion of the statute shown above.

■ Where the standard of conduct is fixed by our traffic code, proof of a violation of the statute establishes a prima facie[18] case of negligence if plaintiff is within the class for whose benefit the statute was enacted. In the absence of excuse or justification, liability follows as a matter of law if, upon proof of violation, the negli-

---

[15] Prosser, Torts (2 ed.) § 34, p. 154; 19 Minn. L. Rev. 667.

[16] Cooper v. Hoeglund, 221 Minn. 446, 22 N. W. (2d) 450; Prosser, Torts (2 ed.) § 34, p. 157; Restatement, Torts, §§ 281, 286.

[17] Prosser, Torts (2 ed.) § 34, p. 156.

[18] Prior to the adoption of § 169.96, we held that a violation was negligence per se. See, Butler v. Engel, 243 Minn. 317, 68 N. W. (2d) 226.

gence is the proximate cause of the injury. The burden of going forward with the evidence and establishing excuse or justification or such other defense as may be available shifts to the defendant. It follows that in this case the decisive question is whether a gratuitous guest is within the class of persons for whose benefit the statute was enacted without proof of knowledge.

 With these observations in mind, can it be said that the statute now before us was intended to protect a gratuitous guest? Obviously, the statute was intended to protect those within the automobile from the deadly fumes of carbon monoxide gas. The language of the statute now imposes a duty upon the owner of maintaining a muffler in such shape that carbon monoxide gas cannot enter the car. If it were found that defendant's decedent had knowledge of the defective condition of the muffler and appreciated the danger of operating the car in that condition and failed to warn plaintiff's decedent, negligence could be found irrespective of the statute. As far as a guest is concerned, the only object of the statute would be to change the common-law rule. It would seem that the only purpose of passing this statute was to impose upon the owner of an automobile the mandatory duty of maintaining his car in such condition that deadly carbon monoxide fumes cannot escape into the automobile. We are of the opinion that the duty so imposed upon the owner of the car was intended for the protection of all persons lawfully within the automobile. This would include guests as well as other lawful occupants of the car. It follows that proof of a violation of the statute established a prima facie case of negligence.

██ Defendant next contends that, if defendant's decedent owed his guest a duty at all, the evidence conclusively shows that he failed to realize the dangers inherent in the condition of the car. He argues that decedent, by exposing himself to the same danger, established conclusively that he did not realize the existing dangers. He further seeks to invoke the presumption of due care.

As we stated above, the legislature may, by statute, prescribe a standard of conduct requiring affirmative action for the protection

of persons theretofore unprotected by the rules of the common law. It may also require affirmative action where liability attached only for active misconduct.[19] Under such authority it could impose upon the owner of an automobile the mandatory duty of safeguarding those lawfully within the automobile from the deadly effects of carbon monoxide fumes escaping from a defective muffler where no such duty had existed under the common law or the former rules of the state. It could further provide that proof of a violation of such statute constitutes prima facie evidence of negligence, thereby casting upon the violator the duty of establishing an excuse or justification for a violation of such statute.

Where the statute imposes a mandatory duty to maintain parts of an automobile in a certain way, lack of knowledge of its present condition or failure to appreciate the dangers inherent in noncompliance with the statute does not furnish such excuse or justification for a failure to comply as to bar recovery. At best, it is only evidence from which the jury may find that the prima facie case established by proof of a violation of the statute has been overcome.

█ Nor does the presumption of due care control here. Proof of a violation of the statute, under circumstances where it establishes a prima facie case of negligence, rebuts the presumption of due care. It would have been error to submit the presumption to the jury. TePoel v. Larson, 236 Minn. 482, 53 N. W. (2d) 468.

In view of our decision that § 169.69 was enacted for the benefit of a gratuitous guest, it follows that the court submitted the case to the jury upon the correct theory. We find no reversible error.

Affirmed.

[19]Restatement, Torts, § 286, *comment a.*