338 P.2d 1067

HARTFORD FIRE INSURANCE COMPANY, a Corporation, and Sam A. Minces, d/b/a Nehi Bottling Company, Plaintiffs-Appellants, Cross-Appellees,

v.

Hugh R. HORNE, Administrator of the Estate of Pat Bolke, deceased, Defendant-Appellee and Cross-Appellant.

No. 6487.

Supreme Court of New Mexico.

March 17, 1959.

Modrall, Seymour, Sperling, Roehl & Harris, Allen C. Dewey, Jr., Albuquerque, for appellants.

Bingham & Klecan, Albuquerque, for appellee.

McGHEE, Justice.

This action was brought as a result of a head-on collision between a truck owned by plaintiff Minces and a car driven by Horne's decedent, Pat Bolke, on State Road 47 south of Albuquerque about one hour after sunset on October 4, 1956, in which the truck and its cargo were practically destroyed and Miss Bolke was killed.

Minces sought damages he sustained which were not covered by an insurance policy and Hartford Fire Insurance Company sought reimbursement for money paid by it on account of an insurance policy it had issued to Minces.

The administrator sought damages for the death of his decedent which he claims was due to the negligent operation of the truck by its driver who was an employee of Minces.

Jury verdicts were returned denying damages on the complaint and counter-claim and each party has appealed from the judgment rendered on the verdicts.

Miss Bolke was rendered unconscious by the collision and died shortly thereafter without having regained consciousness. The two drivers were the only known eye-witnesses.

The truck driver was proceeding in a northerly direction on his return trip from Belen to Albuquerque where he had been delivering bottled Nehi and collecting empty bottles. Miss Bolke was returning from Al-

buquerque to her home in Belen when the collision occurred on what was described by one witness as a sharp curve, but not one of ninety degrees; by another as a half-moon curve, and by still another as a curve which could be made at any speed up to 80 to 90 miles an hour. There was a wide shoulder with a deep ditch on each side of the paved two-lane road. The road from Belen ran generally in a northerly direction except for a stretch running in easterly direction just before reaching the curve. The road from Albuquerque to the point of collision ran in a southerly direction. Upon approaching the curve, the vision of one traveling the road to Albuquerque would be limited to some degree by a hill on the western side of the road beyond the curve. One witness for the plaintiffs gave the maximum range of visibility for one going north up the road beyond the curve as 250 yards. Visibility increased as the northbound driver rounded the curve.

The truck driver testified that as he was making the curve Miss Bolke's car came around the hill; that he had been unable to see her from where she started the curve but saw her in the process of making it, and observed she was on his side of the road when she was approximately one hundred yards or less away; that he flashed his lights from dim to bright and back to dim; that when he saw that she was not going to turn into her proper lane he swung the truck to the left in an attempt to avoid a col-lision and then the collision occurred, the point of impact on the truck being its right front which, also, was the point of impact on the Bolke car. Each vehicle was apparently turning left at the time of impact.

There was a double yellow line on the curve and the point of impact was about one foot or foot and one-half east of the center line which was the proper lane of traffic for the truck and the wrong one for the Bolke car. This put a part of the truck over the center line but the plaintiffs explain this resulted from the left turn made by the truck driver in his attempt to avoid the collision.

The first error assigned by plaintiffs is that the court erred in giving of instructions concerning the presumption that the deceased used due care. Instruction No. 11 on the plaintiffs' case, reads:

"You are instructed that the defendant's decedent, Pat Bolke, is presumed by law to have used due care for her own safety, i. e. she is presumed to have been free from negligence. This presumption is founded on the law of nature, i. e. the instinct of self preservation. This presumption of due care and caution on the part of Pat Bolke, though rebuttable, is in the eyes of the law the same as evidence, and unless you find that this presumption of due care and caution on the part of Pat Bolke was overcome by a preponderance of the evidence produced by the

plaintiffs of negligence on the part of Pat Bolke, then that presumption of due care on the part of Pat Bolke shall prevail and your verdict shall be for the defendant on the plaintiffs' complaint."

A like instruction numbered 11A was given on the counter-claim.

The plaintiffs say first an instruction on the presumption of due care has no place in a negligence case, that the rule of the burden of proof and preponderance of evidence takes care of the situation in that the burden of proving negligence is on the plaintiff.

They next say that even though it be proper to instruct on the presumption of due care that part of the quoted instruction which says that the presumption is in the eyes of the law the same as evidence is erroneous. They also say that even if we hold an instruction on the subject is sometimes proper, the proof clearly showed that Miss Bolke did not use due care and, therefore, the presumption disappeared and was not properly the subject of an instruction.

The plaintiffs cite a number of authorities, principally law review articles by eminent authors, in support of their first position, and also the case of Hutton v. Martin, 1953, 41 Wash.2d 780, 252 P.2d 581, in which the views as expressed by Dean Judson F. Faulkner of the University of Washington Law School, as stated in an article "Notes on Presumptions," 15 Wash.L.Rev. 71, 74, (1949), were adopted and their former decisions on the point favoring instructions on the presumption of due care were overruled. Also see procedural effect of presumption of due care, Pennsylvania Bar Association Quarterly, March, 1959, p. 208.

■ This doctrine of the presumption of due care on the part of a deceased is firmly imbedded in our jurisprudence, being first announced in Padilla v. Atchison, Topeka & Santa Fe Ry. Co., 1911, 16 N.M. 576, 596, 120 P. 764, and followed in Hogsett v. Hanna, 1936, 41 N.M. 22, 63 P.2d 540; Griego v. Conwell, 1950, 54 N.M. 287, 222 P.2d 606, and Trefzer v. Stiles, 1952, 56 N.M. 296, 243 P.2d 605.

The article by Dean Faulkner is a very scholarly one and quite intriguing, but we doubt if under it an ordinary jury could follow his reasoning and properly apply the doctrine of presumptions. We do not believe we should overrule our former cases on the subject that an instruction on the presumption of due care should be given in a proper case and that it has a place in our jurisprudence.

■ We are not satisfied, however, with the statement made in the Trefzer case, supra, that such a presumption is evidence in the eyes of the law. The California courts do so hold but we think the instruction went too far. We believe the correct rule is that the presumption operates to protect or shield a person in whose favor it is invoked until credible and substantial evi-

dence which would support a finding is introduced to the contrary, and that it then vanishes as though it had never existed, as was stated by Justice Compton in the agency case of Morris v. Cartwright, 1953, 57 N.M. 328, 258 P.2d 719. The writer feels that a few words in extenuation of the error as to the effect of the presumption in the Trefzer case should be stated. The files in this case have been again examined and they disclose that no answer whatever was made by the appellee to the claim of error by the appellant because of the refusal of the trial court to give the requested instruction set out above. Neither was the correctness of the requested instruction questioned; the error slipped through and, like Topsy, it has grown. The particular error as to the effect of the presumption, however, does not avail the plaintiff anything here as they failed to point it out to the trial court, but we welcome the opportunity to set the members of the bench and bar straight on the question.

The instruction was copied from the Trefzer case.

The claim that such an instruction should not have been given in this case in view of the record is, however, well taken. There was but one surviving eye-witness, the truck driver, and his testimony clearly shows that the deceased did not use due care. She came down the road a short distance north of the point of impact at a speed shown through a disinterested witness to have been more than the legal limit of 60 miles per hour, and for approximately 100 yards immediately preceding the collision she was on the wrong side of the road, and had failed to heed the warning given by the truck driver when he brightened his headlights and then dimmed them.

■ A careful review has been made of all the testimony in the case, including that of the truck driver. The answers of the latter are clear, responsive and as convincing as the written page can be. It should be here noted that neither the trial judge nor the jurors had the advantage of seeing and hearing this witness, and in such a case the members of this Court are in as good a position as any one to pass upon his testimony. In addition, the physical facts at the scene of the collision corroborate the testimony of the truck driver that the Bolke car was traveling in her left lane and was across a yellow line at the time of the collision.

■ Under such facts an instruction on the presumption of due care should not be given. Morris v. Cartwright, supra; McNamer v. American Insurance Co., 1954, 267 Wis. 494, 66 N.W.2d 342; Mittelstadt v. Hartford Accident & Indemnity Co., 1957, 2 Wis.2d 78, 85 N.W.2d 793; Smith v. Darling & Co., 1952, 244 Iowa 133, 56 N.W.2d 47; Lynghaug v. Payte, 1956, 247 Minn. 186, 76 N.W.2d 660, 56 A.L.R.2d 1090; Eden v. Klaas, 1958, 166 Neb. 354, 89 N.W.2d 74; Prosser, Law of Torts (2d ed.) 1955, sec. 41, and American Law

Institute Model Code of Evidence, rule 704, Penn. Bar Assn. Quarterly, March 1959, p. 208.

The California rule that a presumption is evidence and may outweigh positive evidence adduced against it is probably best exemplified by the case of Smellie v. Southern Pacific Co., 1931, 212 Cal. 540, 299 P. 529, where two Justices dissented. It is clear that the California decisions have been influenced, if not controlled, by their statute on presumptions. In this case one concurring Justice stated such had so long been the law of California that any change should be made by the legislature instead of the courts. We do not care to follow it.

■ The next claim of error is that the trial court should have given plaintiffs' requested instruction No. 1, reading:

"The evidence in this case is undisputed as to the point of the collision. That fact was conclusively established as having been in the north bound traffic lane, and there having been no evidence tending to explain Miss Bolke's presence there in violation of one or more of our New Mexico Statutes; I instruct you that she was, at the time and place of this accident, negligent as a matter of law."

We agree that the requested instruction correctly states the undisputed testimony in the case, and that Miss Bolke was guilty of negligence as a matter of law. The instruction, however, is incomplete in failing to state that if such negligence was a proximate cause of the collision then the defendant was liable for the resulting damage. It is well settled that even though the operator of a motor vehicle is guilty of negligence as a matter of law for violating the law or rules of the road, if such is not a proximate cause of a collision or other damage then it is not ground for a verdict. Terry v. Bisswell, 1958, 64 N.M. 153, 326 P.2d 89. As written, the tendered instruction amounted to no more than an abstract statement of fact and of law, and we are not disposed to put the trial court in error for failing to give it.

■ The next point urged by the plaintiffs as a ground for reversal is the refusal of the trial court to give their requested instruction No. 6, reading:

"A specific statute of this State provides that: 'Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway and where practicable entirely to the right of the center thereof.'

"Another specific statute provides that: 'Drivers of vehicles proceeding in opposite directions shall pass each other to the right and upon roadways having width for not more than one line of traffic in each direction each driver shall give to the other at least

one-half of the main travelled portion of the roadway as nearly as possible.' "

The statutes from which the language was taken are § 64–18–8, 1953 N.M.S.A., leaving out the exceptions as to which there was no evidence showing they were applicable, and § 64–18–9, in full.

The trial court did in its instruction No. 13 give the contents of § 64–18–13. We feel the part of our statutes set out in the requested instructions should have also been given in order that the jury might have all the applicable statutes. We hold the one given did not cover the field as disclosed by the evidence in this case.

■ The plaintiffs also urge the trial court erred in not granting their motion for separate trials on their complaint and the counterclaim as may be done under District Court Rule 42(b). We find nothing to indicate there was an abuse of discretion in denying the motion.

At the close of counter-claimant's evidence the counter-defendants moved for a directed verdict in their favor on the counterclaim on three grounds:

1. That there had been a failure of proof that the truck driver was in any way negligent.

2. That even though there might be proof of such negligence, the evidence clearly established the contributory negligence of Miss Bolke, and that such was a proximate cause of the collision.

3. The evidence had clearly established that Miss Bolke did not use due care and the presumption of such was destroyed by the evidence.

Their objection to the submission of the doctrine of last clear chance came by way of objection to the court's instruction on the subject.

■ The motion for a directed verdict on the count of the counter-claimant alleging the collision was caused by the negligence of the truck driver should have been sustained. Even if it be assumed that the truck driver was negligent, the driver of the car was certainly guilty of negligence which proximately contributed to the collision as is shown by the uncontradicted testimony and the physical facts heretofore detailed, and this fact alone bars a recovery by the counter-claimant.

■ The trial court also submitted the issue of the last clear chance by an instruction on the subject which is not objected to as to its form.

We are of the opinion this issue should not have been submitted under the record made in this case for the reason that the evidence would not, in our opinion, sustain a finding that after the truck driver knew or should have known of the decedent's peril that he then had a clear chance by the exercise of ordinary care to avoid the injury and failed to do so. Also, Miss Bolke had ample opportunity to extricate

herself by simply turning into her proper lane of traffic. See, Floeck v. Hoover, 1948, 52 N.M. 193, 195 P.2d 86. In the short time the truck driver had to turn after realizing she would not turn back into her lane, he cannot be held liable because he turned to the left instead of the right.

The Supreme Court of Washington had a very similar state of facts before it in Erickson v. Barnes, 1940, 6 Wash. 2d 251, 107 P.2d 348, 353, and it stated:

"When two drivers collide head-on after approaching each other on a straight, unobstructed highway, one traveling in his proper lane and the other not, it is difficult to imagine how the doctrine of last clear chance can be applied to the driver who was in his proper lane. It is obvious that he has less than an equal chance to avoid the collision, for to do so he must depart from the path which the statute specifically requires him to maintain, while the other driver needs only to obey the statute and swing back where he belongs.

"When, in such a case, does the offending driver get into a position of peril from which he can not extricate himself? Or, at what point is the driver of the other vehicle no longer justified in relying upon the presumption that the offending driver will obey the law and return to his own lane? No specific answer can be given to these questions. But it is apparent that the offending driver is in no real peril until the cars have closely approached each other, for he can swerve into his rightful lane in less than a second. * * * Since a shift from one lane to the other can be made so quickly, the driver, in his proper lane, is justified in assuming, until the cars are quite close together, that the shift will be made. When the point has arrived when this assumption is no longer justified, it would seem that there is no longer time for the application of the doctrine of last clear chance, for * * * the doctrine implies time for appreciation, thought, and to effectually act."

We believe the holding in the case is sound and is applicable to the facts and problems confronting us here.

In counter-claimant's appeal from the adverse verdict he makes but one point, and that is that the trial court erred in its instruction on sudden peril relating to the first cause of action on the counter-claim for ordinary negligence when it prefaced the instruction with the following:

"There is no question in this cause but that the truck driver, Mr. McAbee, was without any negligence upon his

part confronted with an unexpected danger as he observed Miss Bolke's car coming toward him on the wrong side of the road."

If the trial court felt the first count of the counter-claimant should go to the jury then it should have left the question of McAbee's freedom from negligence to the determination of the jury without the flat statement we have quoted. On the other hand, if it was intended as a comment on the evidence, as is proper under Rule 51 (e) and (f), it should have been prefaced with the statement that while the jurors were the sole judges of the credibility of the witnesses and the weight to be given to their testimony, the court believed or felt that the evidence established the fact that McAbee was free of negligence.

Such a course we believe is almost uniformly followed where the judges comment on the evidence in their instructions. True, it had been stated in the stock instruction that the jurors were the sole judges, etc., and that by nothing the court had said did it intend to express any opinion on the facts, but here was a crucial instruction and the admonition should have been given within the instruction. The claimed error, however, can avail counter-claimant nothing in view of our holding a verdict against him should have been directed on both counts.

The judgment as to plaintiffs' actions will be reversed and remanded for a new trial in accordance with the views herein expressed, and they will recover the costs of this appeal.

The judgment on the counter-claim will be affirmed.

It is so ordered.

LUJAN, C. J., and SADLER, COMPTON and CARMODY, JJ., concur.