633 P.2d 727

**In the Matter of the ESTATE OF Candido MARTINEZ, Deceased.**

**Magdalena L. MARTINEZ, et al., Plaintiffs-Appellees,**

v.

**Vincente H. ANDERSON, et al., Defendants-Appellants.**

**No. 4959.**

Court of Appeals of New Mexico.

July 16, 1981.

Writ of Certiorari Denied Sept. 8, 1981.

Edward J. Apodaca, Jr., Edward J. Apodaca & Associates, Albuquerque, for defendants-appellants.

Narciso Garcia, Jr., Albuquerque, for plaintiffs-appellees.

## OPINION

WOOD, Judge.

This case involves the doctrine of advancements. We (1) refer to certain procedural matters and discuss (2) whether the advancement provision of the Probate Code applies; (3) whether the doctrine of advancements applies to intestate proceedings; (4) the presumption of an advancement; (5) evidence to rebut the presumption; and (6) evidence of advancement apart from any presumption.

Inasmuch as all persons involved in this litigation were at one time named Martinez, we refer to them by their first names.

Theresita, the first wife of Candido, died in 1922 or 1923. There were three children of that marriage—Arturo, Merenciana and Jose G., also known as Jose Diego (hereinafter referred to as Jose).

Candido married Magdalena in 1927. There were six children of this marriage. Three of these six children testified—Gonzalo, Eutimio and Jose Rafael (hereinafter to as Rafael).

Candido executed and delivered a deed to approximately 15 acres of land to each of the children of the first marriage. The deed to Merenciana was in 1937, to Arturo in 1941, to Jose in 1948. Magdalena, the second wife, joined in the deeds to Merenciana and Arturo.

Candido died, intestate, in 1965.

Administration proceedings were begun in 1966. A dispute arose between the children of the first and second wives; the second set of children claimed that the land deeded by Candido to the children of the first wife were advancements. The result was that the attorney who instituted the

administration proceedings withdrew and the delays began.

Jose brought a quiet title suit in 1966 that apparently raised the advancement issue as to him. This case was tried in 1974.

Magdalena and her six children filed a quiet title suit in 1970. This suit named the children of the first wife as defendants. This suit involved the question of advancements to Arturo and Merenciana.

In addition, Arturo asserted, in the administration proceedings, that he was entitled to a child's share of Candido's estate and that the land deeded to him was not an advancement.

In 1978 the trial court ordered a consolidation of the two quiet title suits and the administration proceedings, at least to the extent of the common question concerning the advancements. Also in 1978, an order was entered in the consolidated case, which gave judgment in Jose's quiet title suit which had been tried in 1974. That judgment was that Jose's land was not an advancement and that Jose was entitled to a share of Candido's estate as provided by the applicable law of descent and distribution. This judgment in favor of Jose is not involved in this appeal.

The question of whether Merenciana's deed was an advancement has not yet been tried.

This appeal involves the question of whether Arturo's deed was an advancement. This issue was tried in May, 1980. The trial court's decision was filed in August, 1980 and judgment adverse to Arturo was entered in October, 1980.

The trial court found: "The conveyance to Arturo . . . was intended by the deceased to be the grantee's share of (an advancement against) the estate of the deceased." The trial court concluded: "The conveyance to Arturo . . . was an advancement and said child is not entitled to any other portion of the estate of Candido . . . ."

Arturo appeals; for convenience, we refer to the opposition to Arturo, in both the administration proceedings and the quiet title suit, as Magdalena.

*Procedural Matters*

(a) The delays in this case are unconscionable; justice delayed is justice denied. The differences among the children of Candido were apparent soon after administration proceedings were begun in 1966; that those differences have been only partially resolved, judicially, in 1981 is appalling. The appellate record suggests some reasons in explanation of the delay—difficulties in obtaining the land description and in obtaining abstracts, dilatoriness on the part of at least some of the children, changes in attorneys and changes in judges. These suggested reasons are, however, insufficient to justify a fourteen-year delay in resolving the question of whether Arturo's deed was an advancement. By these comments we do not assess blame against the current trial judge or the current attorneys. The delay does suggest the need for a form of docket control in civil cases which prevents attorneys from proceeding at their leisure. We refer to this again at the close of this opinion.

(b) Arturo complains of various procedures; we dispose of them summarily. (1) The propriety of the trial court's dismissal and subsequent reinstatement of both the administration proceedings and quiet title suit cannot be answered because of the ambiguity of the record. (2) The consolidation of the administration proceedings and the quiet title suit appears to be a consolidation limited to resolving the advancement question and not a consolidation for all purposes; there are numerous parties in the quiet title suit, and issues in that suit differ from the matters to be resolved in the administration proceedings. (3) The trial court made no finding as to estoppel, laches and the statute of limitations; those are not issues in this case. (4) That the trial court's judgment as to Arturo was in the quiet title suit, and that there is no judgment as to Arturo in the administration proceedings, presents no difficulty. The question of an advancement to Arturo, in both suits, was to be resolved at one trial. Appropriate judgments, in both cases, should be entered on remand. (5) That the trial court's rul-

ing, see finding and conclusion quoted above, excluded Arturo from an intestate share, rather than giving Arturo the option of putting the advancement into hotchpot, was consistent with the position of the parties at trial and makes no difference in this case because of the result we reach.

*The Advancement Provision of the Probate Code*

Section 45–2–110, N.M.S.A.1978, provides:

If a person dies intestate as to all his estate, property which he gave in his lifetime to an heir is treated as an advancement against such heir's share of the estate only if declared in a contemporaneous writing by the decedent or acknowledged in writing by the heir to be an advancement.

Arturo contends § 45–2–110 applies, and prevents Arturo's 15 acres of land from being an advancement because there is no contemporaneous writing by Candido, and no written acknowledgement by Arturo, that the 15 acres of land was an advancement. We disagree.

Section 45–2–110 was enacted as a part of Laws 1975, ch. 257. Section 10–101(B) of that law provides:

B. The Probate Code applies to the affairs of decedents dying on or after the effective date of the Probate Code, and to matters of missing persons, protected persons, minors and incapacitated persons commenced on or after the effective date of the Probate Code.

The effective date of the Probate Code was July 1, 1976, Laws 1975, ch. 257, § 10–101(A). Candido died in 1965. This litigation involves no matters pertaining to missing, protected or incapacitated persons, and no matters pertaining to a minor. See *Matter of Estate of Seymour*, 93 N.M. 328, 600 P.2d 274 (1979).

Section 45–2–110, supra, is not involved. The doctrine of advancements applicable in this case is that which existed prior to the enactment of § 45–2–110.

*Whether the Doctrine of Advancements Applies to Intestate Proceedings*

Historically, "the doctrine of advancements applies only in cases of intestacy .... In cases of testacy, however, the term is frequently found in construing the provisions of wills which have made use of the term in attempting to equalize the distribution of estates among legatees and devisees." *Harper v. Harris*, 294 F. 44 (8th Cir. 1923). See *Nobles v. Davenport*, 183 N.C. 207, 111 S.E. 180, 26 A.L.R. 1086 (1922).

Arturo's claim that the doctrine of advancements, in New Mexico, does not apply to intestacy proceedings is based on the following sentence from *In re Williams' Will*, 71 N.M. 39, 376 P.2d 3 (1962): "Advancements should be confined to cases where the testator by will specifically directs that certain gifts already made by him be counted as advancements in equalizing the distribution of his estate."

The reliance on *In re Williams' Will* is misplaced. The quoted sentence refers only to the use of the law of advancements in testacy proceedings. The context of the sentence went to a distinction between ademption and advancement in testacy matters; this distinction was made in pointing out that the doctrine of advancements was not involved, that the issue in that case was whether there had been an ademption. *In re Williams' Will* cited *Sylvanus v. Pruett*, 36 N.M. 112, 9 P.2d 142 (1932), which quoted *Harper v. Harris* with approval as to the use of the doctrine of advancements in testacy matters.

No New Mexico decision rejects the use of the doctrine of advancements in intestacy proceedings; we hold the doctrine is applicable to intestacy proceedings. *Harper v. Harris*, supra.

*Presumption of an Advancement*

*Nobles v. Davenport*, supra, provides a definition of an advancement sufficient for this case:

[A]n "advancement" is an irrevocable gift in praesenti of money or property, real or

personal, to a child by a parent, to enable the donee to anticipate his inheritance to the extent of the gift; or, as somewhat differently defined, a perfect and irrevocable gift, not required by law, made by a parent during his lifetime to his child, with the intention on the part of the donor that such gift shall represent a part or the whole of the donor's estate that the donee would be entitled to on the death of the donor intestate.

See *Harper v. Harris.*

■ *Clement v. Blythe*, 220 Ark. 551, 248 S.W.2d 883, 31 A.L.R.2d 1033 (1952), states: "There is a presumption that a parent's substantial gift to one of his children is intended as an advancement." This presumption is based on the view "that the natural affection of a parent is as strong for one child as for another, and that, in the distribution of his property, the parent will treat his children equally and fairly." *Annot.*, 31 A.L.R.2d 1036 at 1040 (1953).

Candido's deed of 15 acres of land to Arturo raised a presumption that the land was an advancement.

*Evidence to Rebut the Presumption*

The Annotations at 26 A.L.R. 1106 (1923) and 31 A.L.R.2d 1036 (1953) state the holdings of various states as to the quantum of evidence required to rebut the presumption. The amount necessary has been stated as "clear and unmistakable" evidence, a preponderance of the evidence, and slight evidence. *Clement v. Blythe*, supra, states that the "presumption is not an especially strong one. There may evidently be many reasons for a parent to think that one of his children should receive more than an exact share of the estate." *Clement v. Blythe* holds that the presumption may be " 'readily overcome' ".

We need not decide the "strength" of the presumption or choose the quantum of evidence required to rebut it. New Mexico has decided the matter in other cases.

This litigation, being so old, is not governed by the Rules of Evidence. The Supreme Court Order of April 26, 1973, which adopted the Rules of Evidence, states:

"[T]he Rules of Evidence . . . shall be effective July 1, 1973, for cases filed on or after said date. Cases filed prior to July 1, 1973, shall be governed by rules applicable prior to the effective date of these rules."

Both the administration proceedings and the quiet title suit were filed prior to July 1, 1973; Evidence Rule 301, on presumptions, does not apply; New Mexico law on presumptions, prior to the adoption of Evidence Rule 301, is applicable.

*Trujillo v. Chavez*, 93 N.M. 626, 603 P.2d 736 (Ct.App.1979), states:

Until the adoption of the Rules of Evidence in 1973, the law in New Mexico was that a presumption ceases to exist upon the introduction of evidence which would support a finding of its nonexistence. *Hartford Fire Insurance Co. v. Horne*, 65 N.M. 440, 338 P.2d 1067 (1959); *Morrison v. Rodey*, 65 N.M. 474, 340 P.2d 409 (1959); *Morris v. Cartwright*, 57 N.M. 328, 258 P.2d 719 (1953); *Payne v. Tuozzoli*, 80 N.M. 214, 453 P.2d 384 (Ct.App. 1969).

■ The presumption operated against Arturo; he introduced evidence that would have supported a finding contrary to the presumption. That evidence was the trial testimony of Arturo and Merenciana that Candido's deeds to them were their inheritance from their mother, Theresita. Arturo testified that Candido made that statement when Candido and Magdalena signed Arturo's deed; Magdalena's deposition testimony (at trial, her testimony was different) was " 'it was the mother's part he gave to the three.' " With this evidence the presumption vanished "as though it had never existed". *Hartford Fire Insurance Company v. Horne*, 65 N.M. 440, 338 P.2d 1067 (1959).

The ruling that Arturo's deed was an advancement cannot be sustained on the basis of a presumption of advancement.

*Evidence of Advancement Apart From Any Presumption*

In the determination of the question whether a transfer of property from parent to child is a gift, a sale, or an ad-

vancement, the intention of the grantor is the controlling element. [Citations omitted.] And only such intention as exists at the time of the transaction is to be considered.

*Nobles v. Davenport*, supra; see also *Annot.*, 26 A.L.R. 1089 (1923).

The testimony of Arturo and Merenciana, and the deposition testimony of Magdalena, is to the effect there was no advancement. The question, however, is whether there is evidence supporting the finding that the land deeded to Arturo was an advancement. Four items of evidence are directed to this question—the trial testimony of Magdalena, Rafael, Eutimio and Gonzalo.

We have previously pointed out that in her deposition, taken in 1971, Magdalena testified that the acreage deeded to Arturo, Jose and Merenciana was for their mother's part. At trial (1980), Magdalena testified the acreage "was the inheritance he [Candido] left to them"; she also testified that she did not know Candido's intent in executing the deeds; that she remembered going with Candido to Philip Hubbell's office where the deed to Arturo was executed, and remembered signing the deed, but could not remember any discussion with Candido concerning that deed. The trial court admitted Magdalena's deposition without requiring individual questions concerning the deposition. The trial court's reason, in part, was: "I feel her memory has been impaired to some extent since this deposition".

Magdalena's lack of knowledge as to Candido's intent and inability to remember any discussion with Candido concerning Arturo's deed deprive her testimonial conclusion, that the deeds were an inheritance from Candido, of any probative effect. Candido's intent was the controlling element; as to that, Magdalena had no knowledge.

The testimony of Rafael, Eutimio and Gonzalo involves the issue of subsequent declarations of Candido as to his intent when he executed the deed to Arturo. Eutimio, born in 1934, testified that when he was 19 years old (thus in 1953), Candido "told me about the land, that he gave it to my three half brothers [Merenciana is a

female]. It was inheritance, you know, the land." Rafael, born in 1944, testified that when he was 15 years old (thus in 1959), Candido "brought up my two half brothers and my half sister, that they had gotten their inheritance already." Gonzalo testified that Candido stated in three conversations with Gonzalo that the deeds to the 15 acres of land to Arturo, Jose and Merenciana were their share of the inheritance. The first of these conversations was when Gonzalo was 18 years old (he was born in 1940), thus in 1958. The second conversation was in 1963 and the third conversation was in 1964.

The testimony of Eutimio, Rafael and Gonzalo is that in conversations with Candido, 12, 17, 18, 22 and 23 years after the 1941 deed to Arturo, Candido stated that he had given Arturo, Merenciana and Jose their inheritance.

Arturo objected to the admission of this testimony because it was hearsay. The trial court permitted the testimony, but reserved a ruling on the admissibility. The trial court never expressly admitted the testimony; we consider whether it could properly be considered because there is no evidence, apart from this hearsay, to support the finding of advancement.

In contending this hearsay was admissible, Magdalena relied on Evidence Rules 803(3), 804(b)(4) and 804(b)(6). We have previously pointed out that the Rules of Evidence are inapplicable because the administration proceedings and the quiet title suit were filed before the Rules of Evidence were adopted.

The substance of Magdalena's argument for admissibility was that the testimony was admissible under "state of mind", "statement against interest", and "necessity" exceptions to the rule excluding hearsay. The Annotations at 26 A.L.R. 1106 at 1167 and 31 A.L.R.2d 1036 at 1051, point out a conflict of authority as to whether subsequent declarations are admissible "to prove or to rebut the presumption of an advancement." In this case, Candido's subsequent declarations do not involve a presumption—

under the evidence, the presumption ceased to exist. The question is whether the subsequent declarations are competent to show an advancement, regardless of any hearsay exception.

The fact that the declarations were "subsequent" does not answer the question of admissibility. Subsequent declarations were held admissible on the issue of delivery of a deed in *Schultz v. Young*, 37 N.M. 427, 24 P.2d 276 (1933). Subsequent declarations were held admissible on the issue of ademption. *In re Williams' Will*, supra. Both of these decisions point out that admissibility depends on the circumstances involving the subsequent declaration.

■ A circumstance to be considered is the nature of subsequent declaration testimony. Such declarations "are generally regarded as unsatisfactory evidence on account of the ease with which they may be fabricated, the impossibility of contradiction, and the consequences which the slightest mistake or failure of memory may produce." *Ellis v. Newell*, 120 Iowa 71, 94 N.W. 463 (1903). See *Comer v. Comer*, 119 Ill. 170, 8 N.E. 796 (1886); *Rowe v. Rowe*, 144 Va. 816, 130 S.E. 771 (1925). Concern with mistake of memory is particularly appropriate in this case—Eutimio testified to a conversation 27 years earlier; Rafael testified to a conversation 21 years earlier, Gonzalo testified to conversations 16 to 22 years earlier. Compare *McCoy v. Alsup*, 94 N.M. 255, 609 P.2d 337 (Ct.App.1980), where the conversation was two years earlier.

Another circumstance to be considered is the remoteness of the conversations. The closest conversation, offered to prove Candido's intent, occurred 12 years later. Subsequent declarations "several years after the transaction" were held to be too remote in *Thistlewaite v. Thistlewaite*, 132 Ind. 355, 31 N.E. 946 (1892). A declaration one year after the transaction was held to be too remote in *Lowe v. Wiseman*, 46 Ind.App. 405, 91 N.E. 364 (1910). *In re Williams' Will*, supra, in holding that fifty days was not too remote, states:

[E]vidence which is otherwise competent may relate to facts too remote in point of time or matters too far removed from the scene of the transaction to be admissible.

Another circumstance to be considered is that the testimony of Eutimio, Rafael and Gonzalo was self-serving because its effect would be to increase their share of Candido's estate. *Brown v. General Insurance Company of America*, 70 N.M. 46, 369 P.2d 968 (1962), states that with certain exceptions, "[s]elf-serving declarations regardless of relevancy or materiality are incompetent."

■ We do not hold that the hearsay testimony was inadmissible because of any one of the above circumstances. We do hold that the hearsay was inadmissible because of the combination of the circumstances. As an example: Eutimio gave self-serving testimony in 1980 to a conversation with Candido in 1953 to prove Candido's intent in 1941. The time and self-serving circumstances emphasize the possibility of mistaken memory to such an extent that the testimony was inadmissible.

Evidence Rule 803(3) excludes statements "of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." The Advisory Committee's Note explains this limitation:

The exclusion of "statements of memory or belief to prove the fact remembered or believed" is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind.

Although the Rules of Evidence are not applicable in this case, this explanation is applicable to the hearsay testimony under consideration.

The hearsay testimony of Eutimio, Rafael and Gonzalo was not competent and could not be properly considered by the trial court. There being no other evidence to support the finding of an advancement, that finding is erroneous and the judgment based thereon must be reversed.

The judgment of the trial court is reversed. The cause is remanded with instructions to enter judgments in both the administration proceedings and the quiet title suit that the 1941 deed to Arturo was not an advancement. The trial court is also instructed to give these cases precedence on its civil docket with the purpose of deciding the advancement issue as to Merenciana, and closing these cases in a reasonable time after this decision becomes final. Any requests for delay by litigants or counsel are to be closely scrutinized; the trial court should impose a time schedule for bringing this litigation to an end.

Arturo is to recover his appellate costs.

IT IS SO ORDERED.

LOPEZ and WALTERS, JJ., concur.