9 P.(2d) 142

SYLVANUS v. PRUETT et al.

No. 3621.

Supreme Court of New Mexico.

Jan. 4, 1932.

Rehearing Denied March 24, 1932.

J. G. McGrady, of El Paso, Tex., Holt & .Holt, of Las Cruces, and A. W. Pollard, of Deming, for appellants.

Hanna & Wilson, of Albuquerque, and Fred Sherman, of Deming, for appellee.

HUDSPETH, J.

This is a suit brought by the appellee, Sylvanus, in the district court of Luna county, to have certain deeds and conveyances adjudged subordinate to a judgment lien of the appellee and to have the interest of appellant J. A. Pruett, the judgment debtor, in the lands described in the complaint sold to satisfy the judgment lien. The appellant Tigner answered and prayed that the executors of P. H. Pruett's estate be brought in as defendants. The executors appeared and adopted the answer filed by the appellant, Tigner. A reply was filed by the appellee. Fred Sherman, the owner of an interest in an older judgment, intervened and issue was

joined by an answer of the appellee, Tigner, and the executors to the petition in intervention and the reply thereto. Decree was entered foreclosing the judgment liens and appointing a special master to sell the real estate involved to satisfy the same.

Appellant J. A. Pruett is the son of P. H. Pruett, who died testate, a resident of El Paso, Tex., on the 25th day of February, 1924. His will, dated August 18, 1923, was admitted to probate in the county court of El Paso county, Tex., May 6, 1924. An exemplified transcript of the El Paso county court record admitting the will to probate was filed in the probate court of Luna county, N. Mex., and on the 5th day of March, 1928, ancillary letters testamentary were issued by the probate court of Luna county, N. Mex., to J. A. Pruett, J. B. Pruett, and C. E. Pruett, the executors named in the will. After making provisions for the payment of his debts and bequest to the widow, the will provided:

"3. I direct that my executors herein as soon after my death as conveniently may be done sell of all my lands wheresoever situated for cash or part cash and part notes and the proceeds thereof to be divided and paid over by them among and to my children in the manner hereinafter stated, and such executors are given full authority to execute warranty deeds conveying fee simple title to any and all of my lands and other property. All of the property standing in my name, both real and personal, is considered by me as belonging to my separate estate for the reason that the same has been paid for out of proceeds of property owned by me before the marriage of myself to my wife, Laura A. Pruett.

"4. Should my executors fail for any cause to sell any of my real estate within two years after this will is probated, then I give all of the land so unsold to my children in the same manner and to the same extent as my other estate is given to them by the provisions of this will hereinafter made.

"5. I direct that my executors, as soon as they can conveniently do so, collect all notes and other moneys owing to me and collect any notes that may be owing for lands which they may have sold partly upon a credit.

"6. The proceeds of all the personal property which I may own at my death (except the household and kitchen furniture and the gifts and legacies hereinbefore given to my wife) and the proceeds of the sale of lands I give, devise and bequeath to my eight children equally, to-wit:

"W. E. Pruett, J. A. Pruett, J. B. Pruett, C. E. Pruett, Viola Ward, Ora J. Prude, Lola Espy, and Jettie L. Smith, subject, however, to the following provisions and conditions, to-wit: * * *

"I have already made certain advancements to certain of my children and taken their due bills therefor, as follows, to-wit: * * *

"To J. A. Pruett, $4488.50, April 21, 1921.

"I contemplate making other advancements to more or less of my children before I die. I direct that each child shall account to my

estate for the aforesaid advancements so made by me and for any advancements I may hereafter make, with four per cent per annum interest thereon from the date of each advancement, so that the same with such interest shall be deducted from such child's share of my estate receiving any advancement. * * * ".

Paragraph 9 reads as follows: "I have this day made conveyances of all my property to my three sons, J. A. Pruett, J. B. Pruett and C. E. Pruett, as trustees in fact, and have signed an agreement with them by which I plan to have my estate disposed of during my lifetime substantially as provided in this will provided I live until my estate is turned into cash, except that I expect to retain sufficient funds to provide for the maintenance of myself and my wife so long as we shall live and to provide for her maintenance and the legacy of three thousand ($3000.00) dollars and $100 per month, to be paid to her should she survive me, as above provided. I hope to be able to have my estate so disposed of in my lifetime, and thereby dispense with the costs, expenses and court proceedings that would otherwise be necessary after my death." The trust agreement and deed, referred to in section 9, were not probated with the will.

On the 8th of March, 1928, the three executors of P. H. Pruett, deceased, executed an executors' deed by which they attempted to convey the lands described in the complaint to the appellant Tigner. On the same day, the appellants C. E. Pruett and J. B. Pruett, being joined by their wives, executed a warranty deed attempting to convey these lands to the appellant Tigner. Theretofore, in the year 1927, all the other devisees of P. H. Pruett, deceased, including the judgment debtor, J. A. Pruett, had quitclaimed to the said C. E. Pruett and J. B. Pruett. The court found that J. A. Pruett was insolvent.

The district court of Luna county in January, 1925, rendered judgment for more than $1,500 in favor of the appellee, Sylvanus, and against the defendant J. A. Pruett. Transcripts of the docket of the judgment were duly filed and recorded in the county records of Grant and Luna counties in the month of February, 1925. The testator acquired title to the lands involved in this suit by deed executed by J. A. Pruett and wife February 12, 1923, after a transcript of judgment rendered by the district court of Luna county, N. Mex., against J. A. Pruett had been recorded in the county records of that county, in which judgment the intervener, Fred Sherman, had an interest amounting to $100. Long prior to the recording of this transcript of judgment, the judgment debtor and his wife had executed a mortgage in favor of his father, P. H. Pruett, the testator, and the said testator and the judgment debtor on the day this judgment was rendered, and shortly before the recording of the transcript of judgment, entered into a written contract by which the judgment debtor agreed to convey these lands to his father under certain conditions, and in case of sale before conveyance the father was to be paid his mortgage debt and some $20,000 of unsecured debts, the remainder of the purchase price going

to the son. It also states that the father shall be the owner of the lands "to all intents and purposes" from the date of the agreement, and that the debts above mentioned were canceled.

■ 1. Appellants maintain that P. H. Pruett, the testator, by virtue of his prior mortgage and the contract by which the judgment debtor agreed to convey the lands to his father, became the equitable owner of the lands prior to the recording of the transcript of the docket of the judgment of the intervener, and that no judgment lien was created on the land by the filing of such transcript. The contract was not acknowledged nor recorded, and was not signed by the wife of the judgment debtor.

Under the present statute, 1929 Comp. § 118-110, the judgment lien creditor is not affected by an unrecorded instrument of which he has no knowledge. The contract does not purport to convey the title to the land, and the main purpose of the parties seems to have been to give security to the father for his $20,000 of unsecured debts. A mortgage or transfer attempted to be made of the real property of the community by either husband or wife alone is void and of no effect. Miera v. Miera, 25 N. M. 299, 181 P. 583.

"The rights of the creditor are fixed by the condition of affairs as they existed at the time of the inception of his lien, and cannot be varied by any subsequent conveyance which the debtor could not have been coerced by the courts to make." Niles v. Davis, 60 Miss. 750.

The contract was unenforceable and did not affect the rights of the judgment creditor. El Paso Cattle Loan Co. v. Stephens & Gardner, 30 N. M. 154, 228 P. 1076.

Under 1929 Comp. § 76-110, a money judgment rendered by the Supreme or district court of New Mexico becomes a lien on the real estate of the judgment debtor only after a transcript of the docket of the judgment is filed for record with the county clerk of the county where the real estate is situate. Kaseman v. Mapel, 26 N. M. 639, 195 P. 799.

Upon the filing of the transcript of the docket of the judgment of the intervener, a lien on the land in controversy in Luna county was thereby created. P. H. Pruett, the testator, took title to this land subject to the judgment lien of the intervener, and there was no error in rendering judgment foreclosing the lien of the intervener on the land situate in Luna county. The transcript was not filed in Grant county until after the deed of J. A. Pruett and wife to P. H. Pruett of February 12, 1923, was recorded.

■ 2. Appellants raise for the first time in this court question of the right of appellee, Sylvanus, to maintain this suit, claiming that the judgment lien of plaintiff was enforceable directly by sale and not enforceable in equity.

The question not having been raised in the court below, it will not be considered here. Fullen v. Fullen, 21 N. M. 212, 153 P. 294; J. B. Colt Co. v. Chavez et al., 34 N. M. 409, 282 P. 381.

3 and 4. Appellants maintain that the executors took the title to the lands in fee as trustees by virtue of the warranty deed of testator, signed and acknowledged, together with a trust agreement, on the same day he made his will and as part of the same transaction; that the deed executed by the same individuals, as executors, conveyed the title vested in them as trustees to the appellant, Tigner, and that there was no title, legal or equitable, in J. A. Pruett, individually, or as devisee—that he was given only a distributive share in the proceeds of the lands. They cite, among other cases, Hammett v. Farrar et al. (Tex. Com. App.) 29 S.W.(2d) 949; Merrill v. Boal, 47 R. I. 274, 132 A. 721, 45 A. L. R. 830. In this Texas case the deed to the trustee was delivered during the lifetime of the testatrix and immediately recorded, while in the case at bar the deed has not been recorded, and, in fact, was not shown to have been delivered, nor is there any evidence that the trustees qualified as such. The authorities on the doctrine of equitable conversion were fully reviewed by Mr. Chief Justice Parker in Citizens' Nat'l Bank v. First Nat'l Bank of Albuquerque, 29 N. M. 273, 222 P. 935. This theory of appellants seems to have been an afterthought since their answer states: "That upon the death of P. H. Pruett said executors considered that the trust and title thereby acquired by them by virtue of the deed made by P. H. Pruett and wife to them of date August 18, 1923, ceased and considered that said lands belonged to said estate and should be sold by them as executors of said estate under said will."

Trustees may disclaim a trust by an answer in chancery. Perry on Trusts (7th Ed.) § 271. It is apparent that nothing has been done by appellants as trustees, and, if the time within which the trustees may sell and convey under the power in the will has expired, they would have to resort to the court for an order of sale. Perry on Trusts, § 764.

Section 4 of the will contains the following: "Should my executors fail for any cause to sell any of my real estate within two years after this will is probated, then I give all of the land so unsold to my children. * * *" It will be seen from the language above quoted that the will in the case at bar differs in two respects from the will considered in the case of Citizens' Nat'l Bank v. First Nat'l Bank of Albuquerque, supra, viz: (1) The testator limited to two years after the probate of the will the period within which the executors and trustees were authorized to sell the land; (2) he provided for the distribution in specie of the land unsold at the end of the two-year period. Whether the legal title was vested in the trustees or the devisees seems to be immaterial, since the deed, trust agreement, and will are alleged to be part of the same transaction, and, under appellants' theory, must be interpreted together. The limitation as to time would apply to the trustees as well as the executors. Appellant Tigner does not occupy the position of an innocent purchaser. The answer admits notice of the judgment lien of the

appellee, Sylvanus, and, if he relied upon the warranty deed of the testator alone vesting title in the three grantees, the judgment debtor, J. A. Pruett, would have appeared to be the holder in fee simple of one-third undivided interest in the lands to which the judgment lien would have attached prior to the date of his quitclaim deed to his brothers, the two solvent executors, in the year 1927. If reference is had to the will and trust agreement for evidence that J. A. Pruett held the title as trustee, and that his interest in the estate was charged with advancements, then, in that case, the whole of the will must be considered and the limitation on the power of the trustees and executors will appear. The testator's wishes and directions, as expressed in the will, must be followed. Citizens' Nat'l Bank v. First Nat'l Bank of Albuquerque, supra; Sakariason et al. v. James, Sheriff, 22 N. M. 441, 163 P. 1080; West v. Bailey, 196 Mo. 517, 94 S. W. 273; Fields et al. v. Fields et al. (Or.) 3 P.(2d) 771. Under the New Mexico statute, the testator may authorize his executors to sell and convey real estate (Bull v. Bal, 17 N. M. 466, 130 P. 251), notwithstanding the title passes to the heirs and devisees (1929 Comp. § 47-302; Smith v. Steen et al., 20 N. M. 436, 150 P. 927). That the testator may limit the time within which the power of sale may be exercised is not seriously questioned. 24 C. J. p. 168, § 651; Thompson on Construction of Wills, § 602; Daly v. James, 8 Wheat. (21 U. S.) 495, 5 L. Ed. 670; Fidler v. Lash, 125 Pa. 87, 17 A. 240. In this case the testator

not only so limited his executors and trustees to the period of two years, but provided for the distribution of the unsold lands in specie.

Appellants maintain that the two-year period commenced with the issuance of ancillary letters in New Mexico and not with the probate of the will in Texas, and cite, among other cases, McCartney v. Osburn, 118 Ill. 403, 9 N. E. 210; Solis v. Williams, 205 Mass. 350, 91 N. E. 148; Molten v. Sutphin, 66 N. J. Eq. 20, 57 A. 974; Mott v. Ackerman, 92 N. Y. 539.

The will affords evidence that the testator had a lively appreciation of the cost of probate proceedings and the desire to avoid them in the distribution of his estate. His deed to his three sons, bearing the same date as the will, is, in form, a warranty deed and contains no reference to the trust agreement or the will. It was evidently the plan and purpose of the testator that the trustees should be able to sell and convey these lands without probate proceedings in this state. When he made the provision for the distribution of his lands unsold in specie, he must have intended that provision to apply to all unsold lands wherever situate at the same time. He evidently contemplated only one probate proceeding, and that in Texas, the place of his residence.

Our conclusion is that the executors' deed to appellant, Tigner, having been executed after the expiration of the period of two years from the probate of the will in Texas,

and without authority of any court, did not convey title to the land.

5. The judgment debtor, J. A. Pruett, took title as devisee of an interest in these lands, but not so indefeasibly as to prevent their sale, under an order of court free of the lien of appellee, Sylvanus, for the raising of funds with which to pay the debts of the testator, or the satisfaction of the legacy of the testator's widow. Appellee has no better right than his judgment debtor had at the time the lien attached. 34 C. J. §§ 903, 909.

6. J. A. Pruett received $4,488.50 from the testator April 21, 1921. The rule as to advancements is stated in Harper v. Harris (C. C. A.) 294 F. 44, 47, 32 A. L. R. 727, as follows: "In cases of testacy, however, the term is frequently found in construing the provisions of wills which have made use of the term in attempting to equalize the distribution of estates among legatees and devisees. An example of this is the case of Cowen v. Adams, 25 C. C. A. 547, 47 U. S. App. 676, 80 F. 448, affirmed in Adams v. Cowen, 177 U. S. 471, 44 L. Ed. 851, 20 S. Ct. 668. Cyc. has defined this use of the term in the following language: 'Testators by their wills may and sometimes do adopt the law of advancements, by directing that amounts advanced to legatees and devisees shall be deducted from the shares given them by the will; and where testator's intention is clear that sums advanced should be deducted from bequests made, his intention must of course control.' 40 Cyc. 1922; M'Kibbin's Estate, 207 Pa. 1, 56 A. 62." Appellants attempt to demonstrate that this sum advanced to the judgment debtor, J. A. Pruett, is sufficient, and more than sufficient to satisfy his interest in the lands involved in this suit. They failed, however, to take into consideration his interest in the personal estate or the proceeds of the sale of other real estate of the testator. They alleged that the sale of these lands was necessary in order to raise funds with which to pay the legacy of the widow of the testator, and for other purposes, but they introduced no evidence in support thereof. The widow is not a party to the proceeding, and her rights, which are superior to those of the appellee—her legacy must be satisfied before the distribution of the residue among the children of the testator—were not prejudiced by the failure of the appellants to submit evidence in support of her claim. According to appellants' brief, $6,000 had been advanced to another devisee, from which it would appear that the judgment debtor's share in the estate is substantially more than the advancements made to him. Executors have been held personally liable to the judgment creditor of an insolvent devisee, where, in violation of the provisions of the will, they distributed funds of the estate to the insolvent devisee in pursuance of a scheme to defeat the claim of his judgment creditor. Slusher et al. v. Coates et al., 120 Or. 338, 250 P. 617. The equity of the judgment creditor, Sylvanus, bears a close resemblance to the doctrine of marshaling assets. 24 C. J. 463, 568; New York Life Ins. Co. et al. v. Brown, Executors, et al., 32 Colo. 365, 76 P. 799;

Howell v. Duke, 40 Ark. 102; Brown v. Harding et al., 170 N. C. 253, 86 S. E. 1010, Ann. Cas. 1917C, 548.

7. The decree of the district court was premature and erroneous in that it ordered a sale of the share of J. A. Pruett in the testator's lands for the satisfaction of the lien of appellee, Sylvanus, without first ascertaining the amount of such share or interest by an account taken of the ancestor's debts, advancements, and legacies. Hoge et al. v. Junkin, Com'r et al., 79 Va. 220. Some other questions are discussed in the briefs, but they present no reversible error.

That part of the decree foreclosing the lien of the intervener, Sherman, should be modified so that the same will affect only the lands situate in Luna county, described in the deed from J. A. Pruett and wife to P. H. Pruett, recorded in Book 13 of Warranty Deed Records of Luna County, pp. 77 and 78, and, as so modified, the same should be affirmed, and the decree in favor of the appellee, Sylvanus, should be reversed, and the cause remanded to the district court, with directions to require the pleadings to be so amended as to bring in all interested parties before the court, direct all proper accounts to be taken so as to ascertain the real interest of appellant J. A. Pruett in the estate of P. H. Pruett, deceased, and for further proceedings therein in accordance with the views herein expressed. One hundred and fifty dollars of the costs in this court will be taxed to appellees and the remainder to the appellants.

It is so ordered.

BICKLEY, C. J., and PARKER, J., concur.

WATSON and SADLER, JJ., did not participate.