## UNITED STATES v. 12.381 ACRES OF LAND, MORE OR LESS, SITUATE IN CURRY COUNTY, NEW MEXICO, et al.

### Civ. 675.

United States District Court
D. New Mexico.
Jan. 9, 1953.

Maurice Sanchez, U. S. Atty., Albuquerque, N. M., and Richard G. Cooper, Special Asst. to the U. S. Atty. Lands Division, Albuquerque, N. M., for the Government.

Otto Smith, Clovis, N. M., for the defendant Mueller.

HATCH, District Judge.

In this case the movant asks to be relieved from a judgment in a condemnation action brought by the United States Government in the year 1945. Movant was and is the owner of a tract of land on the outskirts of the City of Clovis, New Mexico. It was unoccupied and unimproved land, so far as the evidence shows, at the time of the taking by the government. The property was condemned for a housing project which was subsequently completed and the property has ever since been occupied by the government for housing purposes.

In the years 1944 and 1945, when the project was first initiated and the condemnation action filed, two separate stipulations were entered into between the government and the owner of the property, the movant herein. Under the first stipulation, defendant agreed to the taking subject to his right to have the property appraised by commissioners and also to his right to object to the appraisal and have a jury trial. By the second stipulation, dated June 18, 1945, it was agreed as follows:

"Now, therefore, it is hereby stipulated and agreed by the above named parties that the sum of two hundred and fifty dollars and no cents ($250.00) is the just compensation for the use of said land for a period of one year beginning March 22, 1944, and ending March 22, 1945, to be paid to the defendant, and said W. F. Mueller hereby

agrees to the entering of a judgment in conformity with this stipulation. That in the event Plaintiff elects to extend the term taken for an additional year or years, the said amount of $250.00 annual rental will be deemed just compensation and be satisfactory to both parties."

Thereafter, on June 25, 1945, a judgment of the court was entered in which the sum of $250 was determined to be just compensation for the use of the Mueller premises for one year beginning March 22, 1944 and ending March 22, 1945. Further, in said judgment it was expressly set forth and provided as follows:

"That in the event Plaintiff elects to extend the terms taken for an additional year or years, the said amount of $250.00 annual rental will be deemed just compensation and be satisfactory to both parties."

From the foregoing, it is necessarily observed and concluded that the movant in this case, the owner of the premises Mueller, entered into a solemn stipulation by which he agreed to accept the sum of $250 per year for the first year for the use of said premises by the government and further specifically agreed that said sum of $250 per year would be just compensation for the use of said premises each year the government should elect to use and occupy the premises. If the government so elected, the agreement was to be effective throughout the national emergency and for three years thereafter.

While counsel in the motion filed speak of entrapment of movant by government agencies and argue the judgment entered was possibly obtained by fraud, there is nothing in the record, nor in any evidence the Court has heard, which indicates any fraudulent conduct on the part of anyone. On the contrary, it affirmatively appears from the records of the court and the solemn and binding agreements entered into that the movant freely and voluntarily entered into the stipulation for the rental agreed to be paid and agreed that it should be just compensation for each successive year that the government should use and occupy the premises. That such stipulation

for rental and as just compensation was entirely agreeable to movant is further evidenced by the fact that for several years he accepted the annual rental as stipulated. It was not until the year 1951 that he raised objection to the amount of rental paid by the government.

It is a matter of common knowledge, which the Court should probably not overlook, that Clovis, New Mexico, is a thriving, fast-growing city in the eastern part of this state. During the war years and thereafter the city has increased rapidly in population, and property which originally was on the outskirts of the city has been surrounded by construction and building probably not contemplated by the movant at the time he entered into the stipulation. In all probability, the property involved in this action has vastly increased in value since the stipulations were signed and the judgment entered. Without question, the increased value of the property has also increased the rental value of the premises, perhaps greatly in excess of the rental agreed to be accepted by the movant when the stipulation was signed and the judgment entered. Such circumstances are not new or unusual. They have occurred in many parts of the country and not only have rental contracts made with the government become apparently unfair on account of increased values, but also rental agreements between private individuals have become apparently unfair under similar circumstances and conditions. Such a situation is not exactly new in the law of contracts. Many times, in fact, it frequently occurs that contracts are entered into under conditions which make them appear to be fair or even advantageous at the time. Later, under changed conditions and circumstances, they appear to be unfair or even disadvantageous. To use an inelegant expression, "hindsight" often reveals that a bad bargain has been made.

I am inclined to view this present case in that light, that at the time the government took the property and the rental was fixed by agreement, movant then believed his bargain with the government was fair and even advantageous to him; but under the changed conditions which I have men-

tioned, he now finds that his bargain is not good and, on the contrary, is not only disadvantageous but, and I agree, to some extent at least it is unfair and unjust.

To be relieved from the clutch of the circumstances in which he has become involved, the movant asks the Court to set aside the judgment and stipulation under the broad powers conferred by Rule 60(b) of the Rules of Civil Procedure, 28 U.S. C.A. While it must be admitted the rule relied upon does grant broad discretionary power to the court and relief from inequitable and unfair judgments can be given, that power is not—broad as it is—to be exercised by the court except for sound, good and sufficient reasons. It is not enough to become dissatisfied with an agreement. Nor is it enough to have an advancing market demonstrate the unwisdom of the agreement from a financial standpoint. Even under the broad powers conferred, substantial reasons must be alleged and proved, and they must be such as go beyond the facts revealed by the circumstances of the pending case.

Indicative of the views held by the courts as to the powers conferred and that such power should not be exercised without sound reasons are the cases of Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207, and United States v. Klapprott, D.C., 9 F.R.D. 282.

If movant had no other remedy of any kind, I might be inclined to stretch the powers conferred upon the court to the utmost in order to give the movant some relief, for I am impressed; in an action between the government and one of its citizens, most liberal construction of statutes and rules should be given in order to prevent unfair and unjust treatment; however, as hereinbefore indicated, the situation in this case is not different from many others that have occurred throughout the country, and I am specifically referring to condemnation suits where property has been taken, as it was in this case. Being aware of this general condition, the Congress of the United States enacted a statute giving the administrative agency which acquired the property power to make adjustment under circumstances such as those with which we are confronted here. That provision of the statute is as follows:

"In any case in which the Administrator holds, on or after April 1, 1950, an interest in land acquired by the Federal Government for national defense, war housing, or veterans' housing and where (1) the term of such interest (as prescribed in the taking or in the lease or other instruments) is for the 'duration of the emergency' or 'duration of the war', or 'duration of the emergency' or 'duration of the war' plus a specific period thereafter, or for some similarly prescribed term, and (2) the rental, award, or other consideration which the Federal Government is obligated to pay or furnish for such interest gives the owner of the land less than an annual return, after payment of real estate taxes, of 6 per centum of the lowest value placed on such land by an independent appraiser, hired by the Government to make such appraisal based on the value of the land before the acquisition of the Government's interest therein, plus 100 per centum of such value, the Administrator shall, upon request of the owner of the land and, notwithstanding any existing contractual or other rights or obligations, increase the amount of future payments for such interest in order to give the owner of the land a return for the Government's use thereof not exceeding the 6 per centum annual return described in (2) of this subsection: Provided, That this subsection shall not affect any payment heretofore made or any future payment accepted by an obligee, nor shall this subsection limit the consideration which may be paid for the use of any land beyond the existing term of the Government's interest therein." 42 U.S.C.A. § 1585(b).

While the movant in this case strenuously contends that the relief provided for in the foregoing statute and which the agency is willing to follow, as the Court is advised, is not adequate, it would amount to some $900 per year as compared with $250, which movant agreed only a few years ago to accept as just compensation. To say the

least, such an adjustment would be of substantial benefit to the movant and would give him considerably more return than he is now getting out of his property. Furthermore, even though movant believes such sum would be inadequate now, the payment of $900 per year rental, plus the taxes, might tomorrow be more than adequate for the rental of the premises involved, in the event conditions should again change and values decrease to some extent as rapidly as they have increased.

Under all the circumstances of this case, it is my opinion the administrative procedure outlined by the Congress for the adjustment of compensation in cases such as we have here should be followed.

Therefore, the motion is denied.