765 P.2d 1170

**Bruce MERRILL, Plaintiff–Appellee,**

v.

**TABACHIN, INC., Defendant–Appellant.**

No. 17743.

Supreme Court of New Mexico.

Dec. 21, 1988.

Bruce D. Black Campbell & Black, P.A., Santa Fe, for defendant-appellant.

Warren F. Frost, Rowley & Parker, P.C., Clovis, for plaintiff-appellee.

OPINION

WALTERS, Justice.

On March 30, 1988, the district court refused to set aside a default judgment for $172,129.88 entered against defendant. Two issues are raised on appeal: whether Tabachin, Inc. entered an appearance and was entitled to written notice prior to default; and whether Tabachin otherwise demonstrated grounds for setting aside the judgment. We hold that no appearance was entered and that the court did not

abuse its discretion in denying defendant's motion to vacate the default judgment.

*Facts*

Pedro Zaragosa Fuentes, a Mexican national and president of Tabachin, Inc., allegedly contracted in 1986 on behalf of the corporation to purchase the Merrill Ranch from Bruce Merrill. On January 9, 1987, Mr. Merrill's attorney filed suit against Tabachin for breach of contract, requesting damages or, alternatively, specific performance. Tabachin was served on January 29, 1987.

Richard Olson, a member of a Roswell law firm, agreed by letter to Tabachin on February 5th to represent Tabachin in the suit. Olson then called Mr. Rowley, plaintiff's attorney, and received an extension of time in which to answer. A few weeks later, a second attorney, Dale Ek, of an Albuquerque firm, called Rowley and indicated that he had been retained to initiate negotiations on behalf of Tabachin.

On March 18, 1987, Rowley wrote both Ek and Olson insisting upon action to "get the matter at issue" by March 25, because his client was facing imminent foreclosure if the sale could not be worked out immediately. Mr. Olson informed Tabachin of Rowley's letter and requested clarification from Tabachin of his own status as Tabachin's attorney. After an indirect communication from Tabachin to Olson's secretary requesting that the file be returned to Tabachin, Olson sent the file, together with the summons and complaint, and considered that he no longer represented Tabachin. Olson never did file an entry of appearance or an answer, and made no further attempts to communicate with Rowley, Ek, or Tabachin prior to default.

On March 25, 1987, Rowley sent another letter to Ek and Olson, informing them that the Federal Land Bank would foreclose on Merrill in a few days, and demanding action before then. There were no responses to his letter. On April 2, 1987, Rowley filed a Certificate of Default. Following a hearing on May 7, 1987, the trial court granted a default judgment to Mr. Rowley's client.

In June of 1987 Tabachin attempted to sell land in Dona Ana County and learned that it was prevented from warranting clear title by reason of a transcript of judgment in this cause having been filed by Merrill. On December 19, 1987, Mr. Ek moved to set aside the default judgment.

*Constructive Appearance*

Tabachin first argues that Merrill was required to give written notice to Tabachin prior to obtaining a default judgment. Under SCRA 1986, 1–055(B), a party who has entered an appearance in a pending proceeding is entitled to receive written notice three days before any hearing on movant's application for default. Failure to give such notice to one so entitled is grounds to set aside a default judgment. *Rodriguez v. Conant*, 105 N.M. 746, 737 P.2d 527 (1987). Tabachin did not enter a formal appearance, but New Mexico recognizes that constructive appearance may be found when the defaulted party's overt actions show an intent to submit to the jurisdiction of the court. *Mayfield v. Sparton Southwest, Inc.*, 81 N.M. 681, 472 P.2d 646 (1970).

When examining the particular actions of a defaulted party to determine whether his conduct has created a constructive appearance, this court has approved the test of examining the defendant's acts to determine both awareness by the defaulted party of the pending lawsuit and an apparent intention to appear. *Id.*, at 682, 472 P.2d at 647. We found in *Mayfield* that an unsworn letter sent by an agent of the defaulted party to the clerk of the district court, referring to the docket number, with a copy to plaintiff's counsel, and enclosing a check for $9.42, showed the party's intent to appear. Neither Tabachin nor its agents here made any attempt to communicate with or file any pleadings in the court, and it claims the right to notice solely because of the communications with and among the attorneys. Although such acts demonstrate Tabachin's awareness of the suit, they are not affirmative acts of appearance or submission to the court's jurisdiction. *Cf. Gengler v. Phelps*, 89 N.M. 793, 799,

558 P.2d 62, 68 (Ct.App.1976), (Sutin, J., specially concurring), where it was suggested that intention could be inferred from a letter between attorneys.

We decline to hold that inconclusive exchanges among attorneys, with nothing more, is a manifestation of appearance. The facts in this case show confusion running between the defendant and its attorneys, and between them and plaintiff's attorney, which could be interpreted, in the face of plaintiff's attorney's almost frantic requests for definitive action of some sort, as willful delay or negligent conduct by defendant in regard to its duty to answer. It is undisputed that no formal appearance was filed, and no advice of appearance of any kind appears in the record. The letters and telephone calls between lawyers indicate no more than an awareness of the lawsuit. We hold that awareness is not enough. The defaulted party must take some affirmative action to signify *to the court* an intention to submit to its jurisdiction in order to consider that he has made an "appearance." Tabachin itself, by its vacillations and confusing instructions to its two attorneys, contributed to the ineffectiveness of counsels' conduct to establish an "appearance."

*Basis for Setting Judgment Aside*

■ Defendant also argues that the trial court abused its discretion in finding that no meritorious defense existed to justify setting aside the default judgment. We have previously declared that sometimes even a slight abuse of discretion will justify reversal of an order denying a motion to set aside default. *Dean Witter Reynolds, Inc. v. Roven,* 94 N.M. 273, 609 P.2d 720 (1980). We said in *Dean Witter* that if there exists excusable neglect *and* a meritorious defense, "and there are no intervening equities, the default judgment should be set aside and the case decided on its merits." *Id.* at 274, 609 P.2d at 721. But the court here found no excusable neglect, and it also found that plaintiff lost the Merrill ranch and the family ranch by reason of the failure of the contract. It concluded that a vacation of the default would prejudice plaintiff by imposing a substan-

tial financial hardship on him. Consequently, even if we assume that the trial court erred in finding no meritorious defense existed, which we do not decide on the state of this record, we are unable to say that that reason alone (in light of defendant's lack of diligence in answering as well as in moving to vacate, its inexcusable neglect, and the prejudice that plaintiff would suffer), was sufficient to require vacation of the default judgment. The trial court's denial of the motion to vacate and reopen is AFFIRMED.

STOWERS, J., and SOSA, Senior Justice, concur.