775 P.2d 730

SUN COUNTRY SAVINGS BANK OF NEW MEXICO, F.S.B., a United States savings bank, Plaintiff–Appellee and Cross–Appellee,

v.

Elisa McDOWELL, Defendant–Appellee and Cross–Appellant,

v.

Jack McDOWELL, Bank of Santa Fe, a New Mexico banking corporation, and The Omega Group Architects, a Texas corporation, Defendants–Appellees and Cross–Appellees,

v.

M.O.B., a joint venture composed of L. Michael Messina, James O'Leary and Gus Blaisdell, Defendants–Appellants and Cross–Appellees.

No. 17629.

Supreme Court of New Mexico.

June 27, 1989.

Messina, Madrid & Maynez, P.A., A. Patrick Maynez, Albuquerque, for defendants-appellants and cross-appellees.

Barnett, Leverick & Musselman, P.C., Richard M. Leverick, Albuquerque, for plaintiff appellee and cross-appellee, Sun Country.

Chris Lucero, Albuquerque, for defendant-appellee and cross-appellant, Elisa McDowell.

## OPINION

BACA, Justice.

Defendants Elisa and Jack McDowell,[1] makers of a promissory note secured by a mortgage, and defendant M.O.B., a joint venture and judgment creditor of Jack McDowell, appeal from the district court's entry of an order and partial summary judgment against M.O.B. and an order entering final judgment for foreclosure and approving attorney fees and costs in favor of the mortgagee, plaintiff Sun Country Savings Bank of New Mexico (Sun Country). On appeal, the McDowells challenge the validity of a stipulation between them

---

1. Defendants Elisa and Jack McDowell (the McDowells) have filed a joint notice of appeal to this court, and Jack McDowell has adopted Elisa McDowell's brief-in-chief in this appeal.

and Sun Country, attorney representation, and the court's refusal to grant their motion to set aside judgment. M.O.B. argues on appeal that the court erred in granting Sun Country and the Bank of Santa Fe partial summary judgment and in limiting M.O.B. to a one-month redemption period. M.O.B. also challenges the court's grant of partial summary judgment without allowing them to complete discovery. We affirm.

On September 26, 1984, the McDowells executed a promissory note with Sun Country in the principal sum of $1,000,000. To secure the note, the McDowells executed a mortgage with Sun Country on commercial property, which was recorded on September 27, 1984. The mortgage provides: "If this mortgage is foreclosed, the redemption period after Judicial sale shall be one month in lieu of nine months."

When the McDowells failed to make payments due on the note at maturity, Sun Country filed a complaint for debt and money due and for foreclosure on March 20, 1986. Subsequently, on April 16, 1986, Sun Country filed an amended complaint naming the McDowells, the Bank of Santa Fe, M.O.B. and the Omega Group Architects (Omega Group) as defendants. The Bank of Sante Fe has a second mortgage which was recorded on September 27, 1984, with a principal balance of $406,000. M.O.B., a junior lienholder, has a transcript of judgment growing out of an entirely different transaction against Jack McDowell, which was recorded on December 17, 1985, in the amount of $45,151.07. Omega Group has a claim of lien, which was recorded on March 10, 1986, in the amount of $18,182.31.

On August 20, 1986, the McDowells filed a Chapter 11 bankruptcy petition and obtained an automatic stay of the pending district court foreclosure proceedings under 11 U.S.C. Section 362(a) (1982 & Supp. IV 1986). On January 12, 1987, Sun Country filed a motion for relief from the stay under 11 U.S.C. Section 362(d). On February 12, 1987, the bankruptcy court held a preliminary hearing on Sun Country's motion. On April 6, 1987, as a result of the hearing, the McDowells, Sun Country, and the Bank of Santa Fe entered and signed a stipulation of adequate protection under 11 U.S.C. Section 362(d)(1) before the bankruptcy court.

The stipulation provided that the automatic stay would be continued and that the McDowells had to sell the property by October 31, 1987. Within seven days of entry of the stipulation, the parties agreed to enter a stipulated judgment of foreclosure that would foreclose the property in the pending court proceedings. The stipulation stated that if the McDowells could not sell the property by October 31, then the stay would be lifted on November 1, 1987, so that Sun Country could file the stipulated judgment of foreclosure and proceed with the foreclosure sale. The stipulation directed all parties to proceed in the state court action to litigate and reduce to judgment the extent or validity of M.O.B.'s lien and any redemption rights or other issues concerning M.O.B.'s claim.

In accordance with the stipulation, Sun Country, the Bank of Santa Fe, the Omega Group, and the McDowells personally and their attorney signed and entered a stipulated partial judgment, decree of foreclosure, order of sale and appointment of special master (stipulated partial judgment). The district court approved and signed the order before depositing it with an escrow agent.

On November 24, 1987, the district court entered an order and partial summary judgment against M.O.B., later denying M.O.B.'s motion for reconsideration. In its order, the court concluded that Sun Country and the Bank of Santa Fe were entitled to an award of reasonable attorney fees, costs, and expenses incurred relative to the collection of the promissory notes and mortgages. Once the court had considered the amount of fees, costs, and expenses to be awarded to counsel in a later hearing, then the mortgage liens of Sun Country and Bank of Santa Fe could be foreclosed.

As the McDowells were unable to sell the property, the court directed the special master to publish notice of a foreclosure sale, which could commence thirty days

after entry of its order. The court also established the priority of all creditors' liens and limited M.O.B. to a one-month right of redemption.

On January 26, 1988, the district court entered an order approving attorney fees and costs and entry of final judgment for foreclosure against the McDowells, and adopted the partial summary judgment order against M.O.B. as part of its final order. Subsequently, Sun Country purchased the debtors' property at a foreclosure sale held on March 4, 1988, bidding in the amount of their lien. The district court entered an order approving special master's report and confirming foreclosure sale on March 22, 1988. M.O.B.'s one-month right of redemption expired on April 21, 1988.

## THE McDOWELLS' CHALLENGES TO THE STIPULATION

■ The McDowells incorrectly raise four issues challenging the court's grant of judgment against them in its partial summary judgment order against M.O.B. The McDowells contend that Sun Country never filed a formal summary judgment motion against them, that they had no opportunity to present evidentiary responses or defenses to a summary judgment motion, that Sun Country's counsel had no authority to sign the partial summary judgment order against M.O.B. on behalf of the McDowells' attorney, and that no attorney representing the McDowells had their authority to allow entry of summary judgment against them. We reject these contentions; the liability of the McDowells was previously set by the signing of the stipulation and the subsequent entry of the stipulated partial judgment when the property could not be sold. The summary judgment motions were against M.O.B. solely, and the subsequent partial summary judgment order against M.O.B. incidentally included language with reference to the McDowells. The court included this language in its order against M.O.B. to establish the priority of all creditors' liens. A court can honor a stipulation concerning the trial of a cause or conduct of the litigation. *Peay v. Ortega*, 101 N.M.

564, 686 P.2d 254 (1984). We find no merit in the McDowells' arguments.

■ The McDowells' contention that they had no opportunity to present defenses to Sun Country's complaint or the foreclosure action is equally meritless. A clause in the stipulation stated: *"The debtors agree that they will not raise any claims they may have against Sun Country as a defense to or as an offset of the Sun Country Note and Mortgage in the foreclosure action...."* (Emphasis added.) In reviewing this unambiguous language, we conclude that the McDowells waived any rights they had to present defenses to Sun Country's complaint or the foreclosure action. This court will not thwart the clear terms of the stipulation. The McDowells negotiated and executed the stipulation; thus, we see no reason why they should not be bound by its terms.

■ The McDowells also contend that Sun Country and the Bank of Santa Fe failed to negotiate in good faith with potential purchasers of the property, thereby violating the terms of the stipulation. Whether the stipulation placed a legal duty on the lending institutions to release their liens of mortgage upon receipt of full payment from potential purchasers was not an issue before the district court. Therefore, as the McDowells did not raise those issues before the district court, they are waived in this appeal. *State ex rel. Brown v. Hatley*, 80 N.M. 24, 450 P.2d 624 (1969).

Finally, the McDowells argue that the district court never entered the stipulated partial judgment and decree of foreclosure into the record. We disagree; the record reveals the stipulated partial judgment was filed in the district court's office on July 14, 1988.

## ATTORNEY REPRESENTATION

■ The McDowells direct us to review the record, which indicates that several attorneys represented them at various times during the proceedings. The McDowells question whether James Kennedy had real or apparent authority to actually represent them as he did not enter a formal appearance on their behalf. We have rec-

ognized that a formal entry of appearance by an attorney is unnecessary if the attorney has entered a constructive appearance before the court. *See Merrill v. Tabachin, Inc.*, 107 N.M. 802, 765 P.2d 1170 (1988). Constructive appearance may be found when the party's overt actions show an intent to submit to the jurisdiction of the court. *Id.* at 803, 765 P.2d at 1711; *Mayfield v. Sparton Southwest, Inc.*, 81 N.M. 681, 472 P.2d 646 (1970).

■ Kennedy entered constructive appearances because he appeared as counsel of record for the McDowells at two hearings concerning the entry of partial summary judgment against M.O.B. On November 17, 1987, Kennedy attended a hearing on Sun Country's motion for presentment of the order and partial summary judgment against M.O.B., where he stated to the court that he represented the McDowells. On December 7, 1987, Kennedy attended a hearing on M.O.B.'s motion for reconsideration of the court's grant of partial summary judgment against them. The court first considered Louis Puccini's motion to withdraw his firm from their original representation of the McDowells. In response to the motion, Kennedy informed the court that he agreed to the withdrawal and had appeared before the court on behalf of the McDowells in another matter in the case. Later, he stated that his appearance was for the limited purpose of representing the McDowells in connection with Sun Country's motion for summary judgment against M.O.B. Then, Kennedy entered his appearance orally before the court. The authority of an attorney to enter an appearance, receive notice, and to act on behalf of the client at hearings may be inferred by the court from the actions of the attorney. While the inference that such authority exists may be dispelled by evidence that the acts of the attorney were not in fact authorized by the client, here the McDowells, presented no evidence which would contradict an inference of actual authority. *See State Savings & Loan Ass'n of Lubbock v. Anderson*, 106 N.M. 607, 747 P.2d 253 (1987).

## MOTION BY THE McDOWELLS TO SET ASIDE JUDGMENT

■ The McDowells maintain that the court abused its discretion in not hearing their motion to set aside judgment before the foreclosure sale. Under SCRA 1986, 1–060(B), Elisa McDowell moved the court to set aside the partial summary judgment against M.O.B. and the entry of final judgment for foreclosure. A trial court has discretion to determine whether a judgment should be set aside under Rule 1–060(B) and we will only interfere if an abuse of discretion is shown. *United Salt Corp. v. McKee*, 96 N.M. 65, 628 P.2d 310 (1981). To vacate a judgment under Rule 1–060(B), the movant must allege proper material grounds for reopening the judgment. *Phelps Dodge Corp. v. Guerra*, 92 N.M. 47, 582 P.2d 819 (1978).

■ The McDowells claimed as grounds for vacating judgment that they had no notice of the summary judgment against them, that no attorney had authority from them to allow entry of judgment against them, that no motion for summary judgment was filed against them and that judgment under the state of the record could not be taken against them. We have concluded that these contentions have no merit. The McDowells wanted the court to vacate its order against M.O.B. and entry of final judgment which were based in part on the stipulation and stipulated partial judgment. However, Rule 1–060 was not designed nor does it permit relief from final orders when the effect of such relief would free the moving party from calculated voluntary choices and decisions previously made. *See United States v. 12,381 Acres of Land, Etc.*, 109 F.Supp. 279 (D.N.M.1953). We also observe that preparations for the foreclosure sale, including notice and publication of the sale, had occurred before the McDowells filed their motion. Therefore, it is clear that the court did not abuse its discretion in not hearing the McDowells' motion to set aside judgment.

## REDEMPTION RIGHTS OF M.O.B.

■ M.O.B., a junior judgment lienholder, contends that the court erred in grant-

ing Sun Country and the Bank of Santa Fe partial summary judgment limiting M.O. B.'s redemption period to one month. M.O.B. claims a statutory right to a nine-month redemption period under NMSA 1978, Section 39–5–18(A)(1) (Orig.Pamp. & Cum.Supp.1988). Whether a mortgagor and a mortgagee can reduce the statutory nine-month redemption period to one month under NMSA 1978, Section 39–5–19, thereby reducing a subsequent junior lienholder's redemption rights to that shorter period, is an issue of first impression in New Mexico.

We first set forth principles of statutory construction that guide us in our review of the pertinent redemption statutes. In construing a statute, we must ascertain and give effect to the intent of the legislature. *Atencio v. Board of Educ.*, 99 N.M. 168, 171, 655 P.2d 1012, 1015 (1982). To determine legislative intent, we consider the history of the statute in question and review primarily the language used. *First Nat'l Bank v. Southwest Yacht & Marine Supply Corp.*, 101 N.M. 431, 435, 684 P.2d 517, 521 (1984). This court must give a statute its literal reading, if the words used are unambiguous. *Atencio*, 99 N.M. at 171, 655 P.2d at 1015. Although we cannot add a requirement that is not provided for in the statute, we do read an act in its entirety and construe each part in connection with every other part to produce a harmonious whole. *State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988).

■ The right of redemption is created by statute, *Ulivarri v. Lovelace*, 39 N.M. 36, 38 P.2d 1114 (1934), and does not arise until property is sold under a judgment foreclosing a mortgage. §§ 39–5–17 & 39–5–18(A)(1). To effect redemption, a junior lienholder must have an interest in the property being foreclosed that is derived from the mortgagor's interest. 9 G. Thompson, *Commentaries on the Modern Law of Real Property* § 4826 (Repl.1958); *see* 3 R. Powell, *The Law of Real Property* ¶ 463(6) (1987).

We observe that the legislature initially created a nine-month redemption period in

a junior lienholder. 1931 N.M.Laws, ch. 149, § 2 (codified at NMSA 1941, § 21–219 and later at NMSA 1978, § 39–5–18(A)(1)). However, the legislature, in 1957 and in 1965, shortened the redemption period by two amendments. 1957 N.M.Laws, ch. 109, § 2 (codified at NMSA 1953, § 24–2–19.1 (Supp.1959); 1965 N.M.Laws, ch. 224, § 1 (codified at NMSA 1978, § 39–5–19). Section 39–5–19 provides: "The parties to any such instrument may, by its terms, shorten the redemption period to not less than one month...." In *First Nat'l Bank in Albuquerque v. Contrends, Inc.*, 90 N.M. 33, 559 P.2d 410 (1977), we implicitly interpreted the phrase "parties to an instrument" to mean that parties to a mortgage may reduce the redemption period to one month.

■ Indeed, the record shows that the mortgage between Sun Country and the McDowells provides: "If this mortgage is foreclosed, the redemption period after Judicial sale shall be one month in lieu of nine months," directly above the signature lines of the McDowells. When the McDowells, the mortgagors, agreed to shorten their own redemption rights by agreement, M.O.B., a subsequent junior lienholder claiming an interest through the McDowells, had a shortened period in which to redeem. No logic would exist in a statute that permitted mortgagors to reduce their redemption period to one month while all other subsequent junior lienholders had a nine-month redemption period. We conclude that although the legislature initially granted a nine-month period of redemption for junior lienholders under Section 39–5–18(A)(1), the legislature also intended to give the parties to the instrument being foreclosed the power to reduce the statutory period provided in Section 39–5–18(A)(1) to not less than one month by entering into a written agreement contained in the instrument being foreclosed. We will not read into Section 39–5–19 limiting words that the parties to the instrument being foreclosed may not affect the nine-month period of redemption contained in Section 39–5–18(A) as it pertains to junior lienholders.

We also have stated that the only absolute right of a junior lienholder following judicial foreclosure of a senior lien is the right to redeem from a senior mortgagee. *Springer Corp. v. Kirkeby–Natus*, 80 N.M. 206, 210, 453 P.2d 376, 380 (1969). This right to redeem is necessarily conditioned upon the terms of the senior mortgage. "[T]he rights of a creditor are fixed by the condition of affairs as they existed at the time of the inception of [the] lien." *F & S Co. v. Gentry*, 103 N.M. 54, 55, 702 P.2d 999, 1000 (1985) (quoting *Sylvanus v. Pruett*, 36 N.M. 112, 116, 9 P.2d 142, 146 (1932)). When M.O.B. filed its judgment lien on December 17, 1985, Sun Country's mortgage was already filed and a matter of record. That recording served as notice to all of the world of the existence and contents of the instrument so recorded from the time of recording. NMSA 1978, § 14–9–2 (Repl.Pamp.1988). M.O.B. had constructive notice of the reduced right of redemption affecting junior lienholders and now cannot complain to this court. Thus, we conclude that M.O.B. took its judgment lien against the property subject to Sun Country's recorded first mortgage with a one-month redemption period.

M.O.B. also argues that Sun Country obtained the property, which was appraised between $2,100,000 and $3,400,000 for a bid of $1,450,053.14, thus receiving a huge windfall. We disagree. Sun Country appeared at a properly advertised foreclosure sale as the only bidder. They bid in the amount of their loan. The sale was not conducted improperly.

We note in passing that M.O.B., on appeal, did not raise the issue that the trial court abused its discretion in failing to increase the redemption period under Section 39–5–19. Therefore, we do not consider this issue.

INCOMPLETE DISCOVERY

M.O.B. contends that the court erred in granting Sun Country and the Bank of Santa Fe partial summary judgment without first allowing them to complete discovery. M.O.B. sought additional discovery to establish its claim of equitable subordination against the Bank of Santa Fe and to properly answer the summary judgment motion.

We observe that, as a general rule, a court should not grant summary judgment before a party has completed discovery, *Beck v. Kansas Adult Auth.*, 241 Kan. 13, 26–27, 735 P.2d 222, 233 (1987); *Downtown Athletic Club v. Horman*, 740 P.2d 275, 278 (Utah App.), *cert. denied*, 765 P.2d 1277 (Utah 1987), particularly when further factual resolution is essential to determine the central legal issues involved or the facts before the court are insufficiently developed. *National Excess Ins. Co. v. Bingham*, 106 N.M. 325, 328, 742 P.2d 537, 540 (Ct.App.1987). However, courts do consider several critical factors before holding that summary judgment is premature including whether the party sought a continuance at the summary judgment motion hearing to complete its discovery, *Pendleton v. Cilley*, 118 Ariz. 84, 88, 574 P.2d 1303, 1307 (1978) (en banc); whether, after the filing of the summary judgment motion until the grant of summary judgment, sufficient time existed for the nonmoving party to use discovery procedures and obtain necessary discovery, *see id.;* whether an affidavit opposing summary judgment contained a statement of the time required to complete the discovery, the particular evidence needed, where the particular evidence was located and the methods used to obtain the evidence, *Bobo v. John W. Lattimore, Contractor,* 12 Ariz.App. 137, 468 P.2d 404 (1970); and whether the party moving for summary judgment gave an appropriate response to a discovery request from the nonmoving party. *Cox v. Winters*, 678 P.2d 311 (Utah 1984).

Applying these legal guidelines, the record shows that the Bank of Santa Fe moved for summary judgment against M.O.B. on May 29, 1987, and Sun Country moved for summary judgment against M.O.B. on July 9, 1987. M.O.B. promptly responded to both motions. Discovery commenced when M.O.B. served the Bank of Santa Fe with its first request for production of documents and its first set of interrogatories on June 19, 1987. On July

27, 1987, the Bank of Santa Fe filed responses to M.O.B.'s discovery requests agreeing to produce certain voluminous documents and records for inspection at its Santa Fe offices. On August 17, 1987, in opposition to the summary judgment motions, M.O.B. filed an affidavit of James O'Leary, a member of the M.O.B. joint venture, who complained that M.O.B. did not have an opportunity to review documents in Albuquerque. On September 17, 1987, M.O.B. served a second request for production of documents to the Bank of Santa Fe. This second request for production of documents was an attempt to generate the exact documents that the Bank of Santa Fe had already agreed to produce at their offices in Santa Fe. Thus, M.O.B. was not deprived access to these documents and was simply arguing about their location. The district court with knowledge of this on September 21, 1987, by letter granted summary judgment in part to Sun Country and the Bank of Santa Fe against M.O.B.

We hold that M.O.B. did not act reasonably in discovering the information. First, M.O.B. did not file a motion under SCRA 1986, 1–037 to compel production of those documents that contained the necessary information. Indeed, M.O.B. knew how to use this motion. On June 26, 1986, M.O.B. filed a motion to compel Sun Country to respond to its first request for production of documents. Second, the record reveals that M.O.B. did not seek a continuance of the summary judgment hearing under SCRA 1986, Rule 1–056(F). Third, M.O.B. had approximately two and a half months to discover the critical information after the filing of the summary judgment motions until the court's grant of summary judgment against it. Fourth, the affidavit of James O'Leary did not elaborate on the time needed to complete discovery or the methods used to obtain the evidence. Furthermore, the Bank of Santa Fe gave an appropriate response to the discovery requests of M.O.B. Thus, the court did not err in granting Sun Country and the Bank of Santa Fe partial summary judgment under these circumstances. For the fore-

going reasons, the decision of the trial court is affirmed.

IT IS SO ORDERED.

SCARBOROUGH and RANSOM, JJ., concur.